RECEIVED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JAN 2 7 2015

JAMES N. HATTEN, Clerk
By _____ Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ROY COVIN, | ) CIVIL ACTION NUMBER **1:15-CV-0245** |
| Plaintiff | ) |
| | ) |
| | ) DEMAND FOR JURY TRIAL |
| V. | ) |
| | ) |
| | ) |
| MARTA (METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY) | ) |
| | ) |
| | ) |
| Defendants | ) |

## COMPLAINT OF DISCRIMANATION, WRONGFUL TERMINATION, RETALIATION, CAUSING A HOSTILE ENVIORNMENT, HARASSMENT, DEFAMATION OF CHARACTER, AND PUNITIVE AND COMPENSATORY DAMAGES

**COME** now, Plaintiff (Roy Covin), who files his suit for Compensatory and Punitive Relief and Damages against Defendant (MARTA - Metropolitan Atlanta Rapid Transit Authority.)

### Introduction

1. In this action Plaintiff seek Relief Based upon Defendant and its agent failure to comply with Federal Civil Rights laws for laws governing civil rights under the constitution of the United States having to do with employment rights held in violation of statutory requirements together with damages and other relief.
2. Federal employment laws have longstanding.
3. The law is clear, of Title VII of the Civil Rights Act of 1964 (Pub. L 88-352) (Title VII), as amended, as it appears in volume 42 of the United State Code, beginning at section 2000e. Title v1 prohibits employment discrimination based on race, color, religion, sex and national original. The Civil Rights Act of 1991 (Pub. L102-166) (CRA and the Lily Ledbetter Fair pay Act of 2009 (Pub. L 111-2) amends several sections of Title Vii. In additional section 102 of the CRA amends the Revised States by adding a new section following section 1977 (42 U.S. S. 1981), to provide for the recovery of compensatory and punitive damages in cases of intentional violations of Title VII.

## CASE BACKGROUND/SUMMARY

There are a number of facts to be addressed in this unjustified termination of Plaintiff (Roy Covin). In the October 28, 2013 email that Project Manager Michael Cooper crafted to illegally terminate Plaintiff and Cooper stated in termination email to MATC that Plaintiff, "did not have the skills and experience required for the project." This is the first of many untruths by Cooper. See **(EXHIBIT-A, EXHIBIT-B, EXHITBIT-C, EXHIBIT-D, EXHIBIT-E, EXHIBIT-F, and EXHIBIT-G for supporting documents)**

Plaintiff attended Albany Tech and studied Drafting, Electrical and Plumbing design. After three years in the U.S. Army as a Vietnam Vet with an honorable discharge (EXHIBIT A pg1), he obtained a B.S. Degree in Social Sciences, a minor in Business administration and a minor in Computer Science. Also he has an Associate Degree in Architecture. After graduating Plaintiff worked with an Architect in Columbus, GA, became a Director of Housing with HUD and Community Development, helping people buy homes with grants, a Director of the State of Georgia Job Training Program and a City Building Inspector, afterward created an Electrical Company for two years in partnership with another Inspector (Electrical). Plaintiff personally wired new churches, homes, businesses and obtained a Federal Electrical contract and wired a Gym for the Albany Georgia Marine Base. Plaintiff wired the Gym from a new underground transformer to two new (400) Amp 3 phase panels, to the Gym and its office addition. Also Plaintiff obtained State Electrical contracts.

In 1990, Plaintiff became a General Contractor, Electrical Contractor, Project Manager, and Superintendent, until 2002, building and wiring homes/churches and eventually building a $2.8 Million Dollar Church. In 2002, he became a Construction Manager for Parson Brinkerhoff Construction Services and the state of Georgia (GRFI) completing a $15 Million Dollar college classroom building and a $28 Million Dollar Gym and an Indoor Pool.

In 2004, Plaintiff was transferred to TRW (Parson's sister Company) and MARTA as an Electrical/Fiber Inspector, installing (128) LCD units, completed (24) Marta stations. Plaintiff resigned to become a superintendent building home/subdivision. After the 2008 mortgage crash, Plaintiff became a Construction Instructor for HUD/Youth Build and Developed a Construction Training for Senior Connection/United Way.

Before coming back to Marta, Plaintiff obtained a job as an Electrician with Synergy Electric rewiring AT&T Buildings with motion detectors/switches and photo cell of its offices, connection area in their builds as Project Manager throughout the Southeast, FL, GA , AL , Miss, Tenn., NC, and SC. He was successful at all these Positions and Electrical endeavors. After one year, He resigned this job after he was recruited to come back to MARTA as an Electrical/Train Control System Inspector to work on the new TCSU/SFU Project because of my Electrical experienced and successful Electrical Inspection with MARTA. Plaintiff was interviewed by Metro Area Transportation Corporation (MATC), hired, MARTA contracted, approved and signed Plaintiff contract, and he was assigned to a Minority company, William, Russell and Johnson, (WRJ) **(EXHIBIT-R - Contract).**

2

For the first year and three months, Swaney was supervised by Eula Raines, former Assistant Project Manager and Black Female – moved from her position after a year and three months, by Michael Cooper and replaced with Michael Swaney who had no experience installing TCFU as he also stated that he did not want to learn this installation of the TCFU. Plaintiff continued to explain to Mr. Swaney that Ms. Raines wanted all Inspectors to learn all phases of the TCSU/SFU train control Project, he constantly stated that Ms. Raines would and need to be moved from this position. Swaney continued to post many daily reports on the MARTA SharePoint system incorrectly. Plaintiff noted this on several of his emails to Michael Moore (Lead Inspector at that time) and Michael Cooper. Swaney resented being supervised by Eula but was promoted by Cooper to Lead Inspector after dissolving Eula Raines of her position because as Mr. Swaney stated, "She said the wrong thing to the right person", Plaintiff Moore and others were passed over and never made aware of the position. Earlier Swaney stated to other staff that "he was promised a manager position with the TCSU project

Eula Raines Assistant Manager (Electrician with EDP) who directly Supervised Plaintiff and the other four (4) Inspectors (doing that time) scheduled all work weekly until she was replaced with Michael Swaney around Aug 2013. Ms. Raines knew of Plaintiff's true attendance and performance was more aware of Plaintiff knowledge, performance, professionalism, attendance, and cooperation on the Train Control SCADA Unit (TCSU) Project for the past year and Raines could give an account and evaluate Plaintiff properly

The Ex-retired Marta employees hired as Contract Inspectors did not have any experience installing the TCSU unit, nor namely Michael Moore (Supervisor), David Todd, Tim Jones, Katie Connole did not have any formal Electrical experience, nor did more than half of the twelve (12) Cleveland Electric (Sub-Contractor) employees, had ever install the TCFU also Cleveland scheduled new Electrical Apprentices to train and work on the TCFU Project.

The first one and one half months, Plaintiff trained along with retired Marta contracted employees (David Todd), retired Marta employees hired by Alstom as Field Engineers, and Cleveland Electric Supervisors, Journeyman, and Apprentices. And Plaintiff was placed with Cleveland Electrician (contractors) and Alstom's Field Engineers to setup install and run wiring for each new TCSU Units, Plaintiff was assigned as inspector each by Ms. Raines. Plaintiff completed with his crew fourteen (14) new TCFU start-up installs.

The MARTA, MATC, Ex-Marta employees hired by Alstom and Cleveland employees all were trained starting in November as to install of the TCFU and the SFU. The subcontractor added new employee with no experience installing the TCFU and Plaintiff also helped trained new Inspectors of them. The main Contractor (Alstom), trained all Marta and sub-Contractors (electrician) and their own three employees that were former Marta employees, hired as field engineers all were trained on the first install of the TCFU including, all of the MARTA Inspectors, and Marta's Computer Engineers for installation of the SFU headed by Eula Rains. Plaintiff also inspected in the installation of the SFU in each Traction Power Rooms, this initial training/install was scheduled and coordinated, Supervised by Eula Raines for fourteen (14) months but according to Swaney (which was repeated constantly to all Inspectors and Electricians) Eula did not know what she was doing and need to be moved to a secretary desk.

3

(Discriminatory with in itself), Eula was moved out of her position. Cooper replaced her with Swaney. Showing their **decretory nature** and **thrust for power** with no respect, consideration or appreciation of neither the Plaintiff nor Raines ability to perform this job for fourteen (14) months.

In June 2013, the Lead Inspector, Michael Moore called Mr. Covin, stating someone called him to say, Mr. Covin was out of the TCR for more than 30 minutes. Roy Covin informed the Inspector that he was in the restroom and in the same statement he added that the Inspectors could leave TCR but not the station doing construction unless for lunch, The Inspector did not know that, Mr. Covin wrote a statement as part of his Evaluation rights **(EXHIBIT K).** During the same month the WRJ staff meet including four (4) employees assigned by MATC of its WRJ/MATC employees including Mr. Covin stating, that there would be layoffs in a couple of months.

In August 2013, Plaintiff's twelve (12) month evaluation was done by Lead Inspector, Michael Moore in which Eula Raines - Assistant TCSU Manager supposed to have done in July but she her was in a confirmation with Cooper and Swaney. Plaintiff's evaluation reflected strong attributes: Timely submittal of Documentation, see…(EXHIBIT – K), number seven (7) reflect a call to Moore of Plaintiff not being constantly in the TCR and the one time a week earlier, being (10) minutes late because of a delay in riding the MARTA train this is after over a year being on time.

The evaluation also noted **STRONG ATTRIBUTES: Timely Submittal of Documentation (See EXHIBIT- K pg. 1)**. However, Michael Cooper stated in his termination letter, "Mr. Covin "has been very uncooperative for very simple things like completion of project forms, properly documented writer reports, performing the key roles of an inspector. The October 28, 2013 termination email to MATC also says that these problems were "brought to his attention in order to try to coach him to develop his skills and follow direction."

Clearly there was no coaching because there was no such problem or documentation of any such problem. Beyond that evidence is the fact that Plaintiff was scheduled for and passed Wayside Certification Training October 7, 2013. If there was this so call, "problem, lack of skills and or experience", Plaintiff would have never been scheduled for and would not have been able to past MARTA's Wayside Certification Training. **(EXHIBIT- S)**

One week afterward Plaintiff was ask to report attendance, on a MARTA- ATC track allegation form, the start and stop time of the Contractor and Plaintiff of the work site and the Contractor was to sign and verify at the end of each work day. Plaintiff did so, but no one picked up the completed forms after weeks, as he was told, that would be done each week.

This is significant in that on two occasions Michael Cooper falsified information to state that Plaintiff did not complete the project forms and if he falsified information once he has and will falsify information again in an attempt to cover himself upon the Plaintiff or any other employee.

4

Also Cooper stated to EEOC that "Plaintiff did not complete forms or properly documented written reports". But documented evidence proves that the work was completed as instructed. **(EXHIBIT - L).** The Plaintiff performed his duty as instructed and is also proven by MARTA Daily Track Time Sheets/Daily report (in Plaintiff possession) that apparently had no value to the managers because the sheets were never picked up. The second time Michael Cooper lied occurred with his documented response to the EEOC inquires of this case which was disputed in the Plaintiff **appeal response to EEOC (EXHIBIT - T).**

One week later Plaintiff was told to check off each wire that was ran, all this was ordered by Michael Cooper (Marta Project Manager) of TCSU Project. The Plaintiff emailed (EXHIBIT -J) to Cooper about this wire check is being done and to be aware of the liabilities, MARTA could be exposed to in Inspectors instructing the Contractor as to where **the new wires should be placed. (EXHIBIT-J)** An email was sent to MATC by Cooper the next day questioning Plaintiff's ability to do electrical work and the installation/inspection of the TCFU this is after, Plaintiff completed (14) initial installations, testing and inspections with no other Inspector and training two (2) new Inspectors.

Mr. Cooper also stated in the previous mentioned email that Plaintiff was "uncooperative and did not perform key roles as an inspector." But Cooper never checked to see if Plaintiff completed the wiring check **(EXHIBIT- I)**, this is evidence that the work was completed by Plaintiff. The **(EXHIBIT-I)** shows three pages of Rack to Rack wiring checks per in outline instructions giving to Plaintiff by managers.

Also Plaintiff was informed that Cooper stated later to several MATC staff that Plaintiff was "arrogant." By this selfish act of abruptly terminating Plaintiff, Cooper was malicious and had no consideration for Plaintiff or his family's welfare. There was willfully, No attempt to understand Plaintiff's email as it related to MARTA's possible liability issues. There was no effort to check and see if Plaintiff completed any of the duties that were assigned.

**There was no effort to ever, professional communicate with the Plaintiff understand his accounts of inspection events. There was no effort, documented or otherwise demonstrating any "coaching" effort or "write ups" to let Plaintiff know or document anywhere that there was a problem with Plaintiff's skills and abilities to do the job he was hired to do and continued to do.** If Marta managers had any ongoing issues, as Michael Cooper state in the October 28, 2013 email, then they failed to provide the Plaintiff with any **DUE PROCESS before termination**, by making the only expression of alleged problem in an email sent to someone else, not Plaintiff, and sent only three days before terminating Plaintiff on November 1, 2013...

MATC Manager Jim Schmid and Construction Manager Doug O'Donnell called Plaintiff to say Mr. Cooper requested Plaintiff be terminated from the TCSU project, and because of layoffs to come they stated, "There were no other project to assign Plaintiff". The MATC Manager stated "he did not understand why Cooper stated what he did", "as Plaintiff has no reprimands or write-ups".

5

Cooper's unfair treatment of Plaintiff was retaliation and malice in the response to the email related to possible MARTA liabilities of Inspectors instructing wiring that is the responsibility of the Contractors, and Plaintiff's inquires about posting the clearly opened position of Eula Raines, which Moore and Cooper stated that there was no such position open. Michael Cooper fails to follow WRJ's termination procedure. Michael Cooper fails to follow MATC and MARTA's termination procedures.

In response to the EEOC, Cooper changed the termination date to November 11, 2013 instead of November 1, 2013 in an attempt to show there was time between Plaintiff email to him and his email to MATC terminating Plaintiff from the TCSU project, but there was no time between the two emails, the termination wrongful, malice, and intentional. Dates are showed on the Separation Notices from both MATC and WRJ **(EXHIBIT N).**

In conclusion, the significance of this situation is that Michael Cooper started at Marta from the bottom cleaning and then repairing rail cars and being trained to work in the TCR (train control room) while being promoted to manager of ACT after some 20-25 years.  Then being appointed as Project Manager of TCFU Construction Project. Michael Moore also started as a railcar cleaner, worked maintaining tracks and was train to work somewhat in the Train Control Room

Neither Michael Cooper nor none of the Ex-Marta employees had experience installing this new TCSU. Nor did Cooper and others have any formal experience as an Electrician, except for Eula Rains, John Jackson, (both worked for MARTA/EP&E). Cleveland's Electrical staff  and Michael Swaney. All MARTA/MATC/Alstom new staff was trained by Alstom's Boston staff on installation of the TCFU and SFU, (Alstom staff, the Main Contractor).

Cooper evidently has some underline prejudice that is proven by his quick negative response to the email; Plaintiff sent the email to him, (explaining that we had been checking off wiring one month after the project.  Plaintiff continued to mark wires but in green as ordered and have photos of my work,

Later Michael Cooper stated to EEOC that Plaintiff did not continue checking wires, or complete MARTA Daily Track Time Sheets, see (EXHIBIT - I) but Cooper lied to continuing his Defamation of Plaintiff's character and an attempt to cover up his misdoings.

During  Plaintiff's exit interview, MATC managers both Jim Schmid and Doug O'Donnell stated they did not understand why MARTA/Michael Cooper wanted to dismiss Plaintiff , when just weeks earlier Michael Cooper informed them that Plaintiff was doing well. Schmid stated to the Plaintiff that, "he tried to talk to Cooper to get him to recant the Termination, but Cooper refused". **Subpoenas, if necessary are forgoing.**

Plaintiff, as a precaution for Cooper sent email (EXHIBIT – J) to help him become aware and be watchful of the liability that come with Inspector instructing the wiring, because earlier Plaintiff caution inspectors twice in staff meetings and reported on daily report that Retired-Marta employees now Inspectors did trouble shoot and installed wires during this installation of the TCSU Project which put MARTA in an liability state.

Plaintiff email was sent on Oct. 28, 2014. Cooper's email was sent to MATC to terminate Plaintiff on Oct. 29, 2014, an immediate direct negative response and misinterpretation, to the email. In the Plaintiff's exit interview with MATC managers, recording (EXHIBIT- M), Doug O'Donnell stated, "Cooper got mad because of your (Plaintiff) email to him". Doug O'Donnell and Rozeal Lambert both MATC employees stated publicly to Plaintiff that Cooper said "that you (Plaintiff) are arrogant". This untruth, comment by Cooper was out order, non-professional and defame Plaintiff's character violating his civil rights.

By this Cooper is saying the Plaintiff is an up-die N…….. and need to be put in his place. Then Cooper Retaliated because he did not want Plaintiff to continue expose unprofessional and half handed work that was done during his time as Manager of ACT which was being exposed during the installation of the TCSU, such as 120V panel wire connectors that were catching fire because they should have been replaced years pass, ground wiring not connection in Train Control Rooms that was required for the TCSU project but altered and as in email (EXHIBIT-U) of ACT worker not correcting wiring at rack that when door was open or closed caused one to two speed restrictions on the tracks, or wiring wired in reverse at the Toll Plaza Cub Station as these should have been corrected years pass under Cooper. All of the above and more overlooked, unprofessional work was either was email to Management/ Cooper (who stated in each staff meet," he had an open door policy"), or recorded in the daily reports.

This act of Wrongful Termination by Cooper toward Plaintiff is proof of Retaliation, Defamation of the Plaintiff's Character incorporated with Discrimination, caused a Hostile Environment in the work place, and untruths in an attempt to rid of the Plaintiff.

There should be accountability for these negative actions as they have been unjust and caused the Plaintiff suffering. During the immediate days after work the Plaintiff suffered from a spike high blood pressure and stress see (EXHIBIT-V), due to having lost his job unjustly and illegally by untruths on the part of Cooper. The Plaintiff's success in the installation projects, and working in the capacity as an inspector in training others, maintaining documentation, showing reasonable and properly addressed concerns for the company's liability issues and working well with his team, is evidence enough that Plaintiff know his job and should have never been terminated. The question here is, what did Plaintiff not do that was not in accordance with an Inspectors' procedures and responsibility, there is no reprimand, no written warning, and no proof of counseling or coaching, only Cooper stating to EEOC that the added work of accountability of Contractor and wire check was not done by Plaintiff, but was done by Plaintiff, see photos, **(EXHIBIT- I).** This work was never checked by Cooper's staff.

Plaintiff will not allow Cooper to negatively affect my creditability and success on this project and my years of success on other projects. This would never happen because I am too God fearing, Industrious and intelligent enough to not allow that to happen. I pray that the truth be known and Cooper will be exposed for the underhanded person that he is.

The TCSU Project with all of its changes and delays is extended from seven (7) years to nine (9) or ten (10) years, and with MATC other contracts, I would have most likely worked at MATC

7

for another twelve (12) years, at my present salary, and earned approximately, Seven Hundred Fifty Two Thousand Dollars ($752,000.00).

## COUNT I - DISCRIMINATION

Mr. Michael Cooper discriminated against Plaintiff, because of his race and is a violation of Title 7 of the Civil Rights Act of 1964. Michael Swaney and Plaintiff both started as inspector on July 2012 with MATC. From Day one Mike Swaney complained about Eula Raines, (a black female who was the assistant project manager of the TCSU Project and former manager of EP&E of MARTA) that she did not know the job and he was promised that Manager job .

Michael Moore, a black make was initially the lead inspector. Michael Swaney stated months earlier to all inspectors that he was brought to MARTA and was promised a "manager position" And that Eula Raines," needed to be moved out of her position because she did not know what she was doing."

In September 2013 Mike Swaney entered the Druid Hill train control room and verbally informed me that Eula Raines, "Had said the wrong thing to the wrong person" and she was fired." Later while looking at an operational flow chart, Mr. Covin discovered that Eula Raines had actually been demoted. Michael Moore was demoted and Michael Swaney was moved to lead inspector. Michael Swany is the same person that miss-located 32 daily reports on the MART Sharepoint Election File System. Mr. Swaney was sent to train with me on install of TCSU in which he had no experience, the Plaintiff told him to read the instructions for the TCFU because Eula Raines wants all Inspectors to have experience in installing of the SFU and the TCFU. Swaney refused to read instructions for TCSU, stating "He was only a SFU man". So this is the person Mr. Cooper promoted. This was Cooper's plan all the time.  In reporting Swaney's actions to Cooper, unaware of the promotion plans for Swaney, Plaintiff became Michael Cooper's negative target. Also and of all African American managers in line for the position, Swaney a white male received the position, Plaintiff with a year of running the show without anyone saying anything about their good work.  This proves Cooper was prejudice and discriminated against the Plaintiff and other blacks in his management.

The position that Michael Swaney was promoted to was not advertised, no resumes were accepted, and no interviews were performed. The Plaintiff sent an email asking about a management position in the office and the response from Cooper was – "there were no positions open".

By demoting the black female, Eula Raines, by overlooking Michael Moore the black male, and by not acknowledging the position (Posting) and not allowing Covin the chance to even interview for the position, submit a resume, or even be aware that the position was open,  is a case of discrimination and questionable motives and a violation of Covin's civil rights.

8

This action of discrimination by Michael Cooper, toward Plaintiff, because of the Plaintiff's race, created a hostile environment in the workplace.

## COUNT II DEPFAMATION OF CHARACTER

In the termination email to Jim Schmid, Michael Cooper stated, that as the project has shifted to a more aggressive installation and testing activities requiring electrical and technical skills, "Plaintiff has not demonstrated the skills and experience required for this project". That is not true, because Plaintiff assisted/Inspected in the **total completion** of TCFU (Train Control S.C.I.D.A.) Upgrade and  SFU (S.C.A.D.A. Field Unit) installations of two (2) train stations.

Also Covin was a Construction Manager, completing a Seventeen Million Dollars ($17M) State of Ga classroom building and completing a Twenty Seven Million Dollar ($27M) College Campus Indoor Pool and Gym. After that project Plaintiff was transfer to MARTA by Parson Brinkerhoff Construction Services to its sister company, S. L. King Engineering in May of 2004 as Electrical and Data Inspector and successfully inspected Data Installation for one and half years, then resigning and becoming a Home Builder Superintendent, the Plaintiff was then called back to MARTA in June of 2012 to work on the TCSU Project.

In July of 2012, Plaintiff started working and inspecting with David Todd, a former MARTA employee, with no electrical experience.  We inspected and the Electrical Contractor installed conduit and patch panel in TCR rooms.  The Plaintiff read and studied the procedure and the specs. Covin has been an electrician and Owned an Electrical Company, and was a General Contractor for 14 years. Plaintiff has an Architecture degree, a Computer Science Minor; Plaintiff has taught and designed electrical plans and drawing.   Plaintiff also completed federal and state electrical contracts to rewire systems and additions from the transformer underground to the building panels as Lead Electrician.

Michael Cooper is not aware the Plaintiff had inspected and did the initial testing and installation assist for 14 TCR rooms, ran/inspected fiber installation through, 30% of the MARTA System for the TCSU systems. Mr. Cooper was also unaware that Covin had worked for MARTA  as an electrical Fiber Inspector from 2004 to 2005 therefore he through he could say his reason for terminating Plaintiff was that Plaintiff did not have enough experience. This is clearly Defamation of Plaintiff character on Cooper's part, in actuality Plaintiff has more experience in Electrical, Computers, Management and Fiber install than Cooper.

 Michael Cooper, by his retaliation of the Plaintiff's emailed (explanation of liability), (**EXHIBIT J**), has violated Plaintiff civil rights by defamation of Plaintiff character. Also Plaintiff was retaliated against By Cooper when he complained about consistently incorrect SharePoint reports posted by Michael Swaney, a white male, and when he asked for  an interview consideration for the same position Mr. Swaney was promoted to over  a African American  male (Michael Moore) who was working the position for one year.

Plaintiff's character was intentionally and maliciously slandered and done for the purpose of causing the Plaintiff (Roy Covin) humiliation, anguish and emotional stress, which Plaintiff's

blood pressure increased for three weeks after the wrongful termination by Cooper, all of which did occur, and was performed with wanton, reckless disregard the consequences to the Plaintiff.

On this TCSU Project the major contractor, Alstom Signaling & Train Control Engineering, hired retired Marta employees as field engineers, who had no experience in installing this TCSU unit. The subcontractor, Cleveland Electric only had about (10%) of its crew that had experience installing this TCSU unit. The MARTA inspectors, five hired by MARTA, retired various MARTA workers, as contract 1099 workers, the remaining inspectors along with myself were hired by MARTA/MATC and was assigned to various private contractors.

The Alstom employees established the specifications/instructions and provided initially training of MARTA MATC inspectors and Cleveland employees for the wiring installation of the TCFU and the SFU. Cleveland electric had hired workers that are apprentices from the beginning of the project up until November 2013 and trained these people to install the TCFU and SFU. The Plaintiff was also instrumental in training some of these individuals and informing them of procedures. Mr. Covin was also instrumental in training of the new inspectors who were assigned with him by MARTA (Eula Raines).

Michael Cooper evidently was never aware that the Plaintiff was instrumental in the training for Inspection assigned to work with Plaintiff on work procedures, specifications/instructions/plans, daily report submission to SharePoint, and daily procedures. Cooper was not aware of Mr. Covin's assignments because he was not out in the field daily with Covin performing all of these tasks. Cooper stating that the Plaintiff didn't understand his job, this is a clear case of defamation of character upon Plaintiff showing… of the email and his … of not being informed of wiring check from the beginning of the project... The information in the termination email is created statements by Cooper without facts only written in retaliation of Covin's email and also as a cover up of Cooper's actions. There was never any complaint of the Plaintiff's working knowledge of electrical work or the installation of neither the TCFU nor the SFU. In June of 2013 two MATC Managers stated that they asked Cooper/Marta Management, how was the Plaintiff performing? They stated that MARTA TCSU Manager (Cooper) stated "that Plaintiff was doing well" as an Inspector with the TCSU Project. Also, neither the Main Contractor Alstom nor the sub-contractor Cleveland Electric had any complaints of the Plaintiff's work and or inspections.

**Plaintiff** graduated with a degree in Architecture and a degree in Social Science and graduated Cum-Luda with a minor in Business and Computer Science. He has been a Project Manager Constructing million dollar buildings for the Georgia State Board of Regions for colleges.

In the email, to Michael Cooper (explaining the Liability Concerns) **(EXHIBIT J),** Plaintiff relayed his previous work experience where it was a factor in relations to Inspector's extent of instruction for wiring the TCFU and stating that a lawsuit involving liability with a subcontractor would hindered the progress of the TCSU project. The Plaintiff was simply relaying this information to help Mr. Cooper and the management recognize this potential liability issue. Evidently, Mr. Cooper felt insulted and did what he could to damage the Plaintiff's character and experience in his termination letter. His intent was malice and pretends.

## COUNT III - WRONGFUL TERMINATION

In Michael Cooper's termination email of Plaintiff to MATC from the TCSU Project email (**EXHIBIT- O**) to Jim Schmid dated Monday, October 28, 2013; **Cooper stated that Plaintiff started as a TCSU inspector in August 2012.   But Plaintiff actually started as an inspector in July 2012. Cooper was not aware of Plaintiff's start date. Cooper stated that when the Plaintiff first started the project was focus on pre-testing activities and field surveys**.  But the Plaintiff's first month working on this project, he worked with David Todd, an inspector and contractor with Cleveland Electric installing conduits and patch panels for the SFU in the traction power rooms, and connecting wires to electrical panel breakers.  But according to Cooper this was not work he did not know of work that the Plaintiff had accomplished**, he his falsifying information in this email. Proving that Cooper was not aware of what was going on, again his email was sent out of prejudice and retaliation of Plaintiff email**.

Michael Cooper further states in the email that in the "past several months as the project has shifted to more aggressive installation and testing activity requiring electrical and technical skills, Mr. Covin has not demonstrated the skills and experience desired an required for this project".

This email was sent to Jim Schmid without following the written/proper termination procedure. Plaintiff was never informed by Michael Cooper or any of his staff that he didn't understand, electrical work, the installation of the TCFU/SFU, the TCSU/SFU procedure, or to install the TCFU nor the SFU. This is what the Plaintiff was hired to do, this is what he did and helped to **produced (14) initial TCFU start-ups/install, wiring and testing, one block of track from Indian Creek station to the Avondale Station completed, with the Cleveland Electric and Alstom staff**.

Because Plaintiff and the group he worked with were the first to install each TCSU Unit, they named themselves "The A Team". Also something Mr. Cooper was not aware of.  **The Plaintiff worked for MARTA/RTP/SL King Engineering, successfully as a Lead Electrical Data Inspector from 2004 – 2005,  where he installed/inspected LCD computerized information signs, conduit, electrical wiring and Cat 5 ( 4 to 8 units in 28 MARTA Stations), tested electrical and data lines and drew "As-Builts", maintained safety and emailed Data reports.** Also Plaintiff certified for wayside safety signal training (MARTA Rail System).

The Plaintiff was hired for the TCSU project by MATC, written contract was signed by MARTA and he was place under William-Russell and Johnson Inc. (WRJ) that has **specific written termination procedures that involve reprimand and or counseling,** only immediate termination if behavior is server.  With respect to most disciplinary problems WRJ follows a Progressive Discipline Policy as described in the Williams-Russell and Johnson, Inc. Employee Personnel Handbook.  "The first offense may call for a verbal warning; the next a written warning; another may lead to a suspension; and still another may lead to termination." In the Plaintiff's case there was no written documentation noting any need for discipline. Furthermore, according to WRJ's Problem Resolution Policy, "no employee will be penalized, formally or

informally, for voicing a complaint." (**EXHIBIT - W**). In this case a concern the Plaintiff voiced caused him to be penalized. The Plaintiff followed protocol in speaking to his then acting immediate supervisor, Michael Moore of concerns about promotion, wiring and MARTA's potential liability. Moore informed the Plaintiff to send his concerns by email to Michael Cooper.

None of WRJ or Marta termination procedures were followed by Mr. Cooper. Therefore, Mr. Cooper has violated Title 7 of Civil Rights Act of 1964, wrongful termination and contract (**EXHIBIT - R**)

Cooper did not followed proper termination procedures, required by WRJ and or MARTA.WRJ is the company Covin was hired by through MATC. WRJ paid Plaintiff salary and provided all benefits to work under MATC as a MARTA partner company, Cooper would have discovered that after Aug 2012 until November 2013 that the Plaintiff worked/inspected with Alstom Signaling Inc. and Cleveland Electric (Contractor and sub-contractor) for the initial installation and testing of the fourteen (14) TCSUs in fourteen (14) train control rooms also we install/inspected performed installation/testing of four (4) SFU's in four (4) traction power rooms.

Cooper is not aware of the Plaintiff's (14) years of electrical experience, (5) years owning and electrical company and **installing and designing electrical for residential and commercial buildings. Cooper's statement of termination to MATC of Plaintiff having a lack of Electrical experience is clearly Defame Plaintiff's Character.**

 Also Cooper is not aware of the Plaintiff's Architectural Degree in which the Plaintiff designed most of my company's electrical, plumbing and HVAC drawing/plans. Because **Plaintiff**'s employment records of file are with MARTA's H.R. Department and at WRJ Cooper was not aware of his performance as testing of the above TCSU units because at the time, Eula Raines, the assistant project manager, made all of the assignment doing the first one and half years of the project. Raines was aware of Plaintiff's work and abilities to complete the job, even though Plaintiff had a satisfactory Performance Review, Raines should have done the evaluation. see (EXHIBIT – K)

## COUNT IV - RETALIATION

Michael Cooper, Project Manager for the TCFU Marta Project, has violated Roy Covin's civil rights pursuant to Title 7 of the Civil Rights Act of 1964, based on the retaliation of the email that was sent by Roy Covin, explaining the possibility of liability in wiring of the TCSU project. This information (**EXHIBIT M**) was later told to Plaintiff and recorder at his exit interview that Mr. Cooper got mad because the Plaintiff sent him the email and he retaliated with a termination email to Jim Schmid, of MATC. (**EXHIBIT O**)

The Plaintiff email to Cooper was sent because (5) days earlier, Michael Moore was sent to the TCR (Brookhaven) that he was inspecting. Michael Moore's verbal instructions from Mr. Cooper was to check off each wire that the contractors installs because it was found in another TCR Room that one of the wires was missing. That conversation was witness by an Alstom employee. They both stated that this was a procedure that was being done and that it was the

responsibility of Alstom. The Plaintiff sent the email to Cooper after request and discussion with Supervisor/Lead Inspector Michael Moore because initially when the project stated there were concerns among MARTA's inspectors who were MARTA retired-employees. They did trouble shooting and wiring, at Kensington TCR. The Plaintiff did point out to them, discussed the same in weekly staff meetings and recorded the same in the daily report about the liability that they could cause MARTA by wiring or giving verbal instructions of placement of wiring during the TCFU installation that was not in the specifications/instructions.

Plaintiff's email to Mr. Cooper was only an attempt to make him aware of the liability that this could cause in order that MARTA would not eventually have any delays in the project. But Mr. Cooper took it somewhat personally, negatively and retaliated, immediately requesting the Plaintiff's termination from this TCSU Project. This is clearly a violation of Plaintiff's Civil Rights (Wrongful termination), (Causing Plaintiff stress and mental anguish). See...(**EXHIBIT - V**)

This act was intentional and malicious and done for the purpose of causing the Plaintiff, humiliation, anguish and emotional distress, which did occur, and was performed with wanton and reckless disregard of the consequences to the Plaintiff, and the negligent actions caused emotional, health distress and in fact affect Plaintiff, monetarily.

## COUNT V HARRASSMENT

On Monday, October 28, 2013, the Plaintiff was assigned to Oakland City TCR; some wiring was checked on the ICP form. He continued a completed checking off of wires in green as they were checked by Alstom and Cleveland Electric for continuity (ringing or testing one point to another). All work was noted and photographed. (**EXHIBIT I**).

That same week the recording of time procedure was not picked up by management as the Plaintiff had been informed that it would be three weeks before. Inspectors were told that this information would be picked up weekly. This recording of time information was instructed by Michael Swaney and was developed and ordered by Michael Cooper to record all time information for contractor and inspectors on a track allegation form used by ATC, Marta Track workers. (**EXHIBIT L**)

The Inspectors time on the job is recorded at rail control once he or she enters the train control room, in the Inspectors daily log and twice in the daily report. This repeated process of recording the Inspectors time, then to add another recording of the Inspectors time is a form of **harassment and creates a hostile environment in the work place**. Plaintiff felt, that he was harassed, because of his reporting of work not done in TCRs years pass under Cooper, reporting information posted on SharePoint by Swaney whom Cooper promoted with no notice to anyone, request for interview of this same position, that there was a matter of hate, and that the work environment had become hostile. As far as Plaintiff knew, he was the only Inspector required to do this additional recording.

13

At this time Plaintiff ask Mr. Swaney how often does this report need to go in, which was not in the instructions. He stated that the reports will be picked up by Management each week. At the week end, all of five days, the reports were picked up by Michael Moore. The next three weeks, the added time recording forms were not picked up (**EXHIBIT - L**). Again this indicates just how important the new procedures was and it value or real need. This also is evidence of harassment.

Cooper stated to EEOC, "the project forms were not completed". Cooper informed EEOC that Plaintiff did not continue the form wire check, but he did not attempt to see if Plaintiff had completed the forms and lied in an attempt to defame Plaintiff's character. Plaintiff has photos evidence of the wiring checked off by Plaintiff and signed after the verbal implementation of the procedure, (**EXHIBIT - L**). The forms were actually a type of harassment and were never met to be collected. This is evident by the fact that no one picked up not one of the total nine (9) pages MARTA Daily Track Time sheets.

Cooper stated that Plaintiff was "uncooperative in properly documenting written reports". While it was reported to Moore and Cooper by Plaintiff in three (3) emails that the person he promoted, Michael Swaney, to lead inspector, who is a white male and who had wrongfully located (32) reports on the Marta SharePoint electronic file system, of which was apparently o.k. with management, but provided confusing information on the SharePoint system. As well, Michael Swaney was in fact promoted over at least three qualified, black candidates by Cooper, and without advertising the position. Plaintiff sent three (3) emails inquiring about this position, but I never received a response until finally told that the position did not exist.

It was evident that Mr. Cooper was making assumptions while at the same time discriminating and trying to cover up his retaliation. Mr. Cooper proceeded to harass Covin with additional items like the MARTA Daily Track Time sheets. This is especially evident in the MARTA/Cooper Response to EEOC. (**EXHIBIT T**) There are a number of contradictions and direct lies**.**

Cooper also stated that Plaintiff "did not perform key roles as an inspector". It is evident that Cooper was not aware that the (14) train control rooms and (4) or more traction power room, where Plaintiff worked/inspected. Covin initiated in each station he worked at: Contractor's Safety and Safety checks, Ventilation Checks (AC/Heat), **internet access** installation, if needed, Training, and inspection and testing work.

Also so Mr. Cooper was not aware that Covin has (7) years' experience as a City, HUD Inspector, State Construction manager, an Electrical and Engineering Instructor. Under Covin's heavy equipment certification, He was certified as a Competent Person. Covin has been a General Contractor and an Electrician for more than (14) years. **Out of madness in Cooper's efforts to terminate, harass Plaintiff, Cooper fail to follow any termination procedure or check to see if assigned work was completed and to actually determine what Plaintiff's skill level and performance was.**

As intentional violations of Title VII this management of the MARTA TCSU Project (Michael Cooper and Michael Moore) caused to violate The Plaintiff's Civil Rights by causing a hostile

environment in the work place and harassment in the form of intimidation, insults, put-downs, and interference against with work performance.

In a conversation with Michael Moore, who was demoted from lead inspector, while discussing the check off wiring in green procedure, at the Brookhaven TCR room, Moore stated that Plaintiff did not know how to work in the TCR? Covin stated that he was hired to install the new TCFU in the TCR and the malfunction work in the TCR is the responsibility of an ATC/MARTA worker. **This was an irresponsible put down, and an insult to the Plaintiff's intelligence knowing that Plaintiff had work/inspected and initially tested 14 TCR rooms successfully with the contractors.** Also in this conversation the Plaintiff stated that the check off wiring in green procedure was being done and was the responsibility of the major contractor (Alstom). And "why I was being treated like a step kids", Moore stated at this point that, "You know what's going to happen to you now." This again was witness on 10-25-2013 by Alstom Field Engineer (Andy Mitchell) who agreed that the wiring checks was being done and were the responsibility of the contractor (Alstom) and its Engineers and **Field Engineers whom four of them were hired from MARTA's retired employees with no experience in installing TCSU/SFU or Electrical experience.**

This statement by Mr. Moore is **an intentional threat using wrongful termination techniques, harassment and causing a hostile work environment**. That weekend Plaintiff wrote the email to Michael Cooper attempting to explain the potential liability of the **Inspectors directing wire installation and or physically installing wires as it will put MARTA in a liability state**, if something was to go wrong in that particular block of track or in the TCR. This check off wiring in green procedure was issued per Michael Cooper by Michael Moore verbally, there were no written instructions.

On Monday Covin was assigned to Oakland City TCR, some wiring was checked. Roy continued a completed checking off wires in green procedure as they were checked by Alstom and Cleveland Electric for continuity (ringing, or testing wiring from one point to another). All work was noted and photographed. **(EXHIBIT- I)**

Two weeks earlier, Michael Swaney instructed me, while inspecting TCSU installation Broke - heaven TCR that Michael Cooper was implementing an accounting for time form on an ATC Track Allegation Form with three written forms as examples/instruction. The verbal instruction from Michael Swaney was to complete the form and have the contractor sign the form.  On the examples, Cooper asked to record the inspectors time on the job and for the contractor sign as through he is verifying the inspectors time, This is harassment, cause hostility, and interferes with work performance because the inspectors time on the job is recorded at rail control once he entered the train control room and calls Rail Control, the time is recorded in the inspectors daily log and twice in the daily report. **This repeated process of recording the Inspectors time, then to add another recording of the inspector's time in the attempt to make contractors accountable for Inspectors time and or to fine some irregularity in the Plaintiff time in that there had been notice by WRJ that Marta was requiring layoff of 20% of MATC's staff**, is harassment, planned wrongful termination, created a feeling of miss-trust which created a **hostile environment in the work place**.

While Plaintiff was working/inspecting installation of the TCFU at Midtown TCR on (9-26-2013), the contractor, Cleveland Electric started initial installation of wiring. Each time the contractor would open a panel door on the TCFU wiring and instrument rack, it would send an alarm to set the train at 25 miles per hour in that block of track. One ATC worker came to the room as he was sent by rail control; he could not remove the speed control signal until he closed the panel door and touched the existing wirers. After about an hour, the Cleveland employees touch a wire in the same rack as they were installing the new wires, a signal was sent again to reduce the speed control in that rail track block. At this time the same ATC worker came back to the TCR. Mr. Covin explained to him that when the Cleveland Electricians touch a wire or open the same panel door on the rack a speed control is set on the track. He attempted to reset the speed control and could not. He touched some wires on the same rack and after two tries he was able to set the speed control back to normal.

At about 2:30pm the speed control was set off again, After the Cleveland Electricians worked in the same rack and panel. The same ATC worker came back with another ATC personal. They started working to reset the speed control. The Plantiff explain to them that there was a problem with the wiring and it needs to be trouble shot and solved. Another ATC worker came in and started to speak loud, saying "What have you guys [Cleveland Electrician] mess up now", and stated that Rail Control did not know we were working here. Mr. Covin attempted to explain to him that when the Worker opened the panel door on the rack or touched wires in this rack, it set a speed control on the track and that he was the Inspector and called in to rail control each morning before the work begin. The ATC Worker continued to talk loud and state that every time that Cleveland workers are in a train control room that always mess something up. And he was going to call rail control to verify our working in the TCR. He called rail control and the Plaintiff spoke to a Supervisor to explain what was going on with the wire at that rack. Then Mr. Covin tried to explain to this ATC Worker what was going on with the wiring and the problem that needed to be solved. The ATC Worker continued to speak loud ranting and raving about Cleveland causing problems in the TCR.

At that point Plaintiff called the lead Inspector, Michael Swaney to explain what was happening. After about thirty minutes Swaney called and stated that Michael Cooper received a call from the ATC Worker and that the worker stated "Plaintiff was arguing with him". Swaney stated that Michael Cooper said that Covin cannot argue with the ATC Workers as though he believed Plaintiff was arguing. Then Swaney stated Plaintiff cannot argue with the ATC workers as though he too believed that Plaintiff was arguing.

Cooper assumed in the beginning that Plaintiff was arguing and took what the ACT Worker said as true and did not accept or was not willing to hear any information from Plaintiff, before coming to a negative conclusion purposely. It was as though Mr. Cooper wanted Covin to be wrong in this situation. So Swaney then asked Covin to send him an email as to what happened. **(EXHIBIT U)** But with the two of them believing that Plaintiff was arguing and not believing that Plaintiff was attempting to explain the problem to the ATC Worker in order that they could work together to resolve the problem and this ATC Worker was only complaining and not working to solve the problem, this caused a hostile environment, distrust and harassment for the

16

Plaintiff because Michael Cooper believed his ex-co-worker (ATC Worker) was truthful before obtaining the facts as through Cooper had preconceived plan/notions against Plaintiff .

Also it is important to understand, the ex-co-worker served under Mr. Cooper in the ACT Worker's Department where there was evidence of unfinished and incomplete work according to their Department's procedures. In almost every train control room there were problems that should have been corrected years ago and was under Michael Cooper's management.

When the Plaintiff reported information to Cooper and others concerning the problems in the train control rooms, Cooper eventually became revengeful, defensive and hostile toward the Plaintiff. It appears that the Plaintiff exposed work that should have been done years ago.

For example, the Plaintiff wrote in his report about connectors that caught on fire in the Avondale Station. This problem of very old wiring should have been replaced years ago. The wiring was not ACT procedure. The Plaintiff also learned that some of the items he reported went unrepaired. That information also went into the Plaintiff's reports.

Unfortunately, as Plaintiff followed procedure in recording his daily reports factually and making sure areas problems received attention and correction. But he did not know that he was being penalized and that doing his job would be held against him.

## WRJ  HUMAN RESOURCES

Linnie Adams-White was the human resources personnel for WRJ (Williams Russell & Johnson Inc.). The Plaintiff was hired by MARTA and contracted as a Field Signal Inspector under MATC and sub out to WRJ. The human resources personnel for MATC are Jim Schmid.

## MARTA VIOLATIONS AND ITS AGENTS

Michael Cooper wrongful terminated Plaintiff because – and his violations of employment laws are:

1. Complaints of Mr. Swaney incorrect reporting on SharePoint.

2. Complaints of Swaney being promoted over other Blacks, Covin and no notice of that position being posted as Plaintiff inquired of these things a number of times.

3. Mr. Cooper discriminated against Covin and other African Americans by replacing a black female (Eula Raines), removing a black male holding that position following Raines removal (Michael Moore), with a white male (Michael Swaney). Cooper also refused to consider anyone except Swaney for the position. The position was never

3.  Mr. Cooper discriminated against Covin and other African Americans by replacing a black female (Eula Raines), removing a black male holding that position following Raines removal (Michael Moore), with a white male (Michael Swaney). Cooper also refused to consider anyone except Swaney for the position. The position was never posted and as to Covin's inquiry of the position, **Cooper stated in an email that there was no such position despite the removals and promotions of that very position.**

4.  Mr. Cooper harassed Plaintiff with unnecessary work and created a Hostile Environment in the workplace.

5.  Cooper purposely Retaliated against Plaintiff for inquiries and complaints of not posting a clearly vacate position and hiring a person who verbally bragged about plans to remove a qualified individual so that he would get the position. He also retaliated against the Plaintiff as his reports, and emails reflected areas of concern and station correction needed in order to help keep the project on track to completion.

6.  Mr. Cooper did not follow MARTA's or WRJ's Termination procedures. This is clearly a Wrongful Termination case under the Title VII of the Civil Rights Act 1964. There is no written record of Michael Cooper attempting to inform Plaintiff of unsatisfactory work before termination. There is no documented evidence of attempted action to correct Plaintiff in which he would have to have been presented within a meeting or in some disciplinary form.

7.  Cooper did not hire the Plaintiff and did not have ready access to his personnel files/records. Cooper also did not assign work or Supervisor daily work. Cooper did not know Covin previous accomplishments with MARTA, or on this TCSU project. Cooper **Retaliated by (immediate) Termination of Plaintiff based his email about Marta's liability concerns** and **Defamed Plaintiff Character** in that email to MATC. Also as to what Moore might have told Cooper as to my verbal response, Cooper never inquired to Plaintiff. Plaintiff completed all assignments as given. Cooper reacted in hostility, in anger and relayed untruths to EEOC as to Plaintiff continue completion of the assigned work and abilities. Cooper also attempted to cover up the violation of Plaintiff's Civil Rights.

8.  Under Title VII of the Civil Rights Act 1964, Covin received notice of right-to sue from the Equal Employment Opportunity Commission ("EEOC"); See (EXHIBIT- X).

## PRAYER FOR RELIEF

Plaintiff demands judgment as set out below from the Defendants, that this Court Declare that the Plaintiff is entitle to rescission and that the Defendant is liable to the Plaintiff as follows:

b.  Compensatory and actual damages in an amount sufficient to compensate Plaintiff for the significant damages he and his family has suffered and will continue to suffer in the future;

c.  Punitive damages in the amount necessary to deter the wrongful conduct herein described;

d.  Post judgment entered;

e.  Cost of this proceeding;

f.  Reasonable attorney fees; and;

g.  Such other relief this Honorable Count or the jury deems necessary to compensate Plaintiff and deter the Defendant and it agents from committing the same or substantially similar wrongful acts against other African American employees of MARTA in the future.

Respectfully Submitted,

_____
Pro se

**CERTIFICATE OF SERVICE**

I Roy Covin hereby certify that I have served a copy of the foregoing pleading on the Defendant

of record below by email and certified mailed  on January _ ɔ ʕ_ 2015.


MARTA (Metropolitan Atlanta Repaid Transit Authority)
ATTN: MARTA Legal Services Department
Elizabeth M. O'Neill
2424 Piedmont Road, NE
Atlanta, GA, 30324-3311


Respectfully, Submitted,

_____
Pro se

*Exhibit A p1*

# ROY C. COVIN

1017 Princeton Park Dr. / Lithonia, GA 30058

Covin712@yahoo.com / (770) 484-0977 / (HOME) (404) 641-8893 (CELL.)

---

## PROJECT MANAGER / SITE & CONSTRUCTION MANAGER

Certified Heavy Equipment Operator, **Bobcat (Bobcat Skid Steer), Excavator, Dozier, Frontend Loader, Backhoe, Construction Forklifts,** Shot Grade, Read Plans – with an outstanding safety record, Industrial, Municipal, and Residential Construction Site Preparation, Experienced in state road and highway infrastructure and Inspection experience, as well as ability to read/draw plans, demonstrate effective communication skills and Heavy Equipment/ Small Crane Operator and Surveying since 1978 Instructor – Architecture/ electrical Engineering – Jr. College

---

## PROFESSIONAL EXPERIENCE:

COVE BUILDER CONTRACTOR                                    2007 - Present

Atlanta, GA

Contractor/ Foreman/Superintendent

**Certified Operator: Bobcat (Bobcat Skid Steer), Backhoe, Excavator, Dozier, and Construction Forklifts. Also NUCA Certified Competent Person for Trenching, Excavation and Road Construction Safety.**

Designed, estimated, contracted; buildings, homes and remodeling projects. Develop land, Build churches, additions and read plans/spec. Estimate /calculate take-off, order material and inspect/contract/coordinate work of Sub-Contractors. Draw plans, using Auto CAD, 3D. Establish specifications and contracts to obtain construction loans for clients.

SR CONNECTION/ UNITED WAY - GOODWILL/HUD                  2005 - 2007

Atlanta, GA

Construction Manager/Trainer (Youth Build)

**Site Developer of community projects coordinating site preparation with guiding/training crews to complete jobs on time and to specifications. Operator of heavy equipment including Bobcat Skid Steer.**

Develop and coordinate the Construction and Training Program. Manage and control projects, negotiated, estimate materials and scheduled sub contractors; construction of non-profit owned buildings. Train Youths in construction,

SCENIC HOMES                                              2004-2005

Atlanta, GA

Lead Superintendant/Land Developer

**Layout Lots and brought sites to elevation for home construction.**

Level off sites for a 120 home subdivision and managed subcontractors to build/complete individual two-story, three and four bedroom, basement homes.

Exhibit A p2

S.L. KING & ASSO-ENGINEERS- PLANNERS & MGMT.  (MARTA) – (RTP)   2004 – 2005
Atlanta, GA
Electrical / Safety Inspector
**Maintained exceptional site safety and OSHA Standards while recording project progress and focus on plan specs for each construction site.**
Installed computerizes signs, (LCD's), Conduit, Wiring, and Data Cable (Cat-5) in (28) MARTA Station, Tested electrical and data lines, Draw As-builds, Maintain Safety, Flag trains, and Email daily reports. Cert. Trained for way-side signals (Marta Rail System).

.

PARSONS BRINSKERHOFF CONSTRUCTION SERVICES INC.          2002 -2004
Atlanta, GA
(GSFIC):  Construction Manager
**Managed construction projects ensuring General Contractors and Sub - Contractors completed work according to plans and specifications for a $13 Million Dollar College Building completed on schedule.**
Also Completed 15,000 sq. ft. computerized State of GA College classroom, Gym, and Indoor pool project estimated at $27 Million.  Inspected/monitored work for compliance, safety, ADA and quality – roads (DOT), civil, site building, electrical, plumbing, and HVAC. Also conducted safety (OSHA) inspections and building CO; email photo and weekly reports, and approved and calculated drawing for Contractors.

COVE BUILDER AND ASSOCIATES LLC                    1989 – 2002
Albany GA
General Contractor/ Project Manager
**Completion as General Contractor and Design Engineer of  1.8 Million Dollar Church, New Gethsemane Baptist, and more than a dozen new home constructions.**
Designed, constructed, estimated, and built, homes and commercial buildings, Develop land, Build complete houses, churches, additions and buildings. Estimate /calculate take-off, order material and inspect/contract/scheduled Sub-Contractors. Draw plans, using Auto CAD, 3D and establish specifications and contract to obtain construction loans. Operate construction heavy equipment including cranes since 1978.

**EDUCATION**
GEORGIA SCHOOL OF CONSTRUCTION, Conyers, GA
NAHETS certified Heavy Equipment Operator
National Utility Construction Association Certification – Excavation Safety and Competent Person

CHATOOHOOEE VALLEY COLLEGE
A.A. Architecture Degree – Blueprint Reading and Surveying

TROY UNIVERSITY, Troy, AL   "Cum laude" 3.08 GPA

*Exhibit A*

*p.3*

Bachelors of Social Science Degree, Architecture Degree.   Minor in Computer Science and Business Administration

M.S. – Graduate studies in Counseling and Human Development.

U.S. Army –"Honorably Discharged" Ft. Hood, TX.

**COMPUTER SKILLS**
 PowerPoint, MS Word, CAD, MS Office, and Excel

EXHIBIT A

TROY STATE UNIVERSITY
UNIVERSITY RECORDS
TROY, ALABAMA 36082
(334)-670-3170 3164

# THE TROY STATE UNIVERSITY SYSTEM



WARNING: Original document has an artifical watermark on reverse side.

**TROY STATE UNIVERSITY**

*UNDERGRADUATE RECORD*

| | |
|---|---|
| Student: Covin, Roy C. | Student No.: 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 |
| Address: 228 Sidney Drive | Date Entered: 11 June 1980 |
| City/State: Columbus, GA : 31907 | Class: |
| Telephone: | Date of Birth: Jan. 8, 1954 |
| High School: Monroe High | Parents/Spouse: |
| Location: Albany, GA | Address: |
| Date of Graduation: 1972 (GED) | City/State |
| Total Units: | |

Sex: Male      Ethnic Origin: Blk

**ACT STANDARD SCORES**

| Eng. | Math | Soc. Stud. | Nat. Sci. | Composite |
|---|---|---|---|---|

**GRADING SYSTEM:**

A  Excellent
B  Above Average
C  Average
D  Below Average but passing – not passing for Graduate Students
F  Failure
IN  Incomplete
W  Withdrew
NG  No Grade
AU  Audit

ONE CREDIT HOUR IS EQUIVALENT TO ONE RECITATION PER WEEK FOR 12 WEEKS.

**QUALITY POINTS:**

A  3 points per hour
B  2 points per hour
C  1 point per hour
D  none

**UNDERGRADUATE RECORD**

DEGREE: Bachelor of Science
DATE COMPLETED: May 25, 1982
DIPLOMA DATED: June 19, 1982
MAJOR: Social Science
MINORS: Business Administration Mil Sci Fnds
**APPROVED BY THE NATIONAL COUNCIL FOR ACCREDITATION OF TEACHER EDUCATION.**

Student is entitled to honorable dismissal unless otherwise indicated.

**Registrar**

Date:

TSU Publications 253-186

| Course Title | Dept. | Course Number | QTR. Hours Attmpt. | Grade | QTR. Hours Earned | Quality Points |
|---|---|---|---|---|---|---|
| UNCONDITIONAL ADMISSION TO TROY STATE UNIVERSITY IN MONTGOMERY. | | | | | | |
| COVIN ROY C             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 | | | | | | |
| SUMMER QUARTER 1980 | | | | | | |
| PRINS OF ACCOUNTING 1 | M11 | ACT | 291 | 5 | D | 5 | 0 |
| BUSINESS LAW 1 | M11 | LAW | 322 | 5 | C5 | 5 |
| WESTERN CIVILIZATION | M11 | HIS | 102 | 5 | F | 0 | 0 |
| ACADEMIC WARNING | | | | | | |
| | | | 15 | | 10 | 5 |
| COVIN ROY C             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 | | | | | | |
| CHATTAHOOCHEE VAL | | | | | | |
| PHENIX CITY AL | | | | | | |
| 1978 80 | | | | | | |
| FUND MATH I | | MTH | 100 | | A | 5 |
| STA LOCAL GOVT | | POL | 221 | | B | 5 |
| PRIN ECO | | ECO | 201 | | A | 5 |
| INTRO BUSINESS | | BUS | 121 | | A | 5 |
| COMP SKILLS I | | EH | 101 | | B | 5 |
| GEN PSYCHOLOGY | | PSY | 201 | | C | 5 |
| SELF DEFENSE | | HPR | 291 | | A | 3 |
| COMP SKILLS II | | ENG | 102 | | B | 5 |
| PHYS SCIENCE | | PS | 101 | | D | 5 |
| FUND OF COMM | | SPH | 101 | | C | 5 |
| FIRST AID | | HE | 265 | | A | 3 |
| BLUEPRINT READ 1 | | AD | 100 | | A | 3 |
| PROB ECO | | ECO | 202 | | C | 5 |
| ARCH DRAFT I | | AD | 110 | | B | 5 |
| ARCH DRAFT II | | AD | 111 | | B | 5 |
| FUND OF MATH II | | MTH | 101 | | A | 5 |
| INTRO PROG | | CS | 101 | | B | 5 |
| DEVELOP ALGEBRA | | MTH | 110 | | B | 5 |
| ARCH DRAFT III | | AD | 112 | | B | 5 |
| BUS MACHINES | | BUS | 131 | | C | 5 |
| BLUEPRINT READ 111 | | AD | 102 | | A | 3 |
| | | | | | 97 | |
| COVIN ROY C             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 | | | | | | |
| FALL QUARTER 1980 | | | | | | |
| ORGANIZATION BEHAVIOR | M11 | MGT | 472 | 5 | C | 5 | 5 |
| MINORITIES IN US | M11 | SOC | 310 | 5 | C | 5 | 5 |
| PRINS CULTURAL GEOG | M11 | GEO | 100 | 5 | B | 5 | 10 |
| ACADEMIC WARNING | | | | | | |
| | | | 15 | | 15 | 20 |
| COVIN ROY C             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 | | | | | | |
| WINTER QUARTER 1981 | | | | | | |
| GEN STUD VISUAL ARTS | M11 | G S | 133 | 3 | B | 3 | 6 |
| PERSONNEL MANAGEMENT | M11 | MGT | 375 | 5 | B | 5 | 10 |
| SOCIOLOGICAL THEORY | M11 | SOC | 420 | 5 | B | 5 | 10 |
| | | | 13 | | 13 | 26 |

*Student Name*

*COVIN, ROY C.*

# THE TROY STATE UNIVERSITY SYSTEM



EXHIBIT A 1 5

TROY STATE UNIVERSITY
UNIVERSITY RECORDS
TROY, ALABAMA 36082
(334)-670-3170/3164

**WARNING: Original document has an artifical watermark on reverse side**

**PAGE 2**

**STUDENT NAME:**

**UNDERGRADUATE RECORD**

**HONORS:**

**CERTIFICATES:**

**TRANSCRIPTS:**

| COURSE TITLE | DEPT. | COURSE NUMBER | HOURS ATMPT. | GRADE | HOURS EARNED | QUALITY POINTS |
|---|---|---|---|---|---|---|
| COVIN ROY C | 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 | | | | | |
| SPRING QUARTER 1981 | | | | | | |
| WESTERN CIVILIZATION | M11 | HIS | 101 | 5 | A | 5 | 15 |
| AMERICAN LITERATURE 2 | M11 | ENG | 312 | 5 | B | 5 | 10 |
| US-SINCE 1877 | M11 | HIS | 202 | 5 | B | 5 | 10 |
| | | | 15 | | 15 | 35 |
| COVIN ROY C | 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 | | | | | |
| SUMMER QUARTER 1981 | | | | | | |
| SOCIOLOGY GEN STUDIES | T02 | G S | 275 | 5 | B | 5 | 10 |
| AMERICAN LITERATURE 1 | T02 | ENG | 311 | 5 | B | 5 | 10 |
| MUSIC INDV DEVELOPMNT | T02 | G S | 131 | 3 | B | 3 | 6 |
| | | | 13 | | 13 | 26 |
| COVIN ROY C | 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 | | | | | |
| MILITARY SVC CREDIT | | | | | | |
| GEN MILITARY TRAINING | | GMT | | | | 20 |
| PHYSICAL EDUCATION | | HPR | | | | 3 |
| | | | | | | 23 |
| COVIN ROY C | 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 | | | | | |
| FALL QUARTER 1981 | | | | | | |
| WESTERN CIVILIZATION | T02 | HIS | 102 | 5 | A | 5 | 15 |
| US TO 1877 | T02 | HIS | 201 | 5 | B | 5 | 10 |
| | | | 10 | | 10 | 25 |
| COVIN ROY C | 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 | | | | | |
| WINTER QUARTER 1982 | | | | | | |
| GUIDED INDPT STUDY | T02 | POL | 493 | 5 | B | 5 | 10 |
| SOC PRBS CONTMP SOCTY | T02 | SOC | 330 | 5 | C | 5 | 5 |
| | | | 10 | | 10 | 15 |
| COVIN ROY C | 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 | | | | | |
| WINTER QUARTER 1982 | | | | | | |
| PRINCIPLES OF BIOLOGY | G01 | G S | 100 | 5 | A | 5 | 15 |
| | | | 5 | | 5 | 15 |

THIS IS AN IMPORTANT RECORD
SAFEGUARD IT.

| 1. LAST NAME - FIRST NAME - MIDDLE NAME | | | 2. SEX | 3. SOCIAL SECURITY NUMBER | | 4. DATE OF BIRTH | | YEAR | MONTH | DAY |
|---|---|---|---|---|---|---|---|---|---|---|
| COVIN ROY CAMPANELLI | | | M | | | | | 54 | 01 | 08 |

| 5. DEPARTMENT, COMPONENT AND BRANCH OR CLASS | | | | 6a. GRADE, RATE OR RANK | 6b. PAY GRADE | 7. DATE OF RANK | YEAR | MONTH | DAY |
|---|---|---|---|---|---|---|---|---|---|
| ARMY | | RA | | SP4 | E4 | | 77 | 12 | 01 |

| 9a. SELECTIVE SERVICE NUMBER | 9b. SELECTIVE SERVICE LOCAL BOARD NUMBER, CITY, STATE AND ZIP CODE | c. HOME OF RECORD AT TIME OF ENTRY INTO ACTIVE SERVICE (Street, RFD, City, State and ZIP Code) |
|---|---|---|
| NA | NA | |

| 8a. TYPE OF SEPARATION | b. STATION OR INSTALLATION AT WHICH EFFECTED | | | |
|---|---|---|---|---|
| Relief from active duty | Fort Hood Texas | | | |

| c. AUTHORITY AND REASON | | d. EFFECTIVE DATE | YEAR | MONTH | DAY |
|---|---|---|---|---|---|
| | | | 78 | 04 | 27 |

| e. CHARACTER OF SERVICE | f. TYPE OF CERTIFICATE ISSUED | 10. REENLISTMENT CODE |
|---|---|---|
| HONORABLE | None | |

| 11. LAST DUTY ASSIGNMENT AND MAJOR COMMAND | | 12. COMMAND TO WHICH TRANSFERRED | USAR Control Gp (Reinf) |
|---|---|---|---|
| 565th Rep Pts Co | FORSCOM FC | RCPAC 9700 Page Blvd St Louis MO 63132 | |

| 13. TERMINAL DATE OF RESERVE/MSO OBLIGATION | | | 14. PLACE OF ENTRY INTO CURRENT ACTIVE SERVICE (City, State and ZIP Code) | 15. DATE ENTERED ACTIVE DUTY THIS PERIOD | | |
|---|---|---|---|---|---|---|
| YEAR | MONTH | DAY | | YEAR | MONTH | DAY |
| 81 | 02 | 02 | Atlanta, GA 30300 | 75 | 04 | 28 |

| 16a. PRIMARY SPECIALTY NUMBER AND TITLE | b. RELATED CIVILIAN OCCUPATION AND D.O.T. NUMBER | 18. | | | |
|---|---|---|---|---|---|
| 76U10 Comm Elet Mat Sup Spc | None | RECORD OF SERVICE | YEARS | MONTHS | DAYS |
| 75/09/09 | | (a) NET ACTIVE SERVICE THIS PERIOD | 3 | 0 | 0 |
| None | | (b) PRIOR ACTIVE SERVICE | 0 | 0 | 0 |
| 17a. SECONDARY SPECIALTY NUMBER AND TITLE | b. RELATED CIVILIAN OCCUPATION AND D.O.T. NUMBER | (c) TOTAL ACTIVE SERVICE (a + b) | 3 | 0 | 0 |
| 76P10 Stk Con Supmn | Stk Con Supv | (d) PRIOR INACTIVE SERVICE | 0 | 2 | 25 |
| 75/07/29 | 223.138 | (e) TOTAL SERVICE FOR PAY (c + d) | 3 | 2 | 25 |
| None | | (f) FOREIGN AND/OR SEA SERVICE THIS PERIOD | 0 | 0 | 0 |

| 19. INDOCHINA OR KOREA SERVICE SINCE AUGUST 5, 1964 | 20. HIGHEST EDUCATION LEVEL SUCCESSFULLY COMPLETED (In Years) |
|---|---|
| ☐ YES ☒ NO | SECONDARY/HIGH SCHOOL 12 YRS (1-12 grades) COLLEGE 0 YRS |

| 21. TIME LOST (Preceding Two Yrs) | 22. DAYS ACCRUED LEAVE PAID | 23. SERVICEMEN'S GROUP LIFE INSURANCE COVERAGE | 24. DISABILITY SEVERANCE PAY | 25. PERSONNEL SECURITY INVESTIGATION | |
|---|---|---|---|---|---|
| | | | | a. TYPE | b. DATE COMPLETED |
| None | 7½ | ☐ $15,000 ☐ $5,000 ☒ $20,000 ☐ $10,000 ☐ NONE | ☒ NO ☐ YES   AMOUNT | ENTNAC | 75-05-28 |

| 26. DECORATIONS, MEDALS, BADGES, COMMENDATIONS, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED |
|---|
| Expert (Rifle) |

| 27. REMARKS |
|---|
| Individual requests a copy of the DD Form 214. R.C.C. <br><br> USAQMS-Comm Elet Mat Sup Sp <br> USAQMS-SCP 76P20 |

| 28. MAILING ADDRESS AFTER SEPARATION (Street, RFD, City, County, State and ZIP Code) | 29. SIGNATURE OF PERSON BEING SEPARATED |
|---|---|
| 25 Eddy Drive <br> Columbus, GA 31702 | |

| 30. TYPED NAME, GRADE AND TITLE OF AUTHORIZING OFFICER | 31. SIGNATURE OF OFFICER AUTHORIZED TO SIGN |
|---|---|
| G. W. THOMPSON, CPT, IN., Asst AG | |

DD FORM 214
1 NOV 72

PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE.

THIS IS AN IMPORTANT RECORD
SAFEGUARD IT.

REPORT OF SEPARATION FROM ACTIVE DUTY

1.

# COVE BUILDERS, ELECTRICAL CONSULTANTS
## BUILDING DESIGNERS & ASSOCIATES
ROY COVIN, C.E.O.   1435 WESTCLIFF CT., ALBANY, GA 31705 (912)883-3224

My company has been in existence for six (6) years.  we provide
Electrical and Building Consultant services and  draw Blue
Prints.  The company also specializes in Electrical and Civil
Engineering and we are associated with the Georgia Association of
Engineering and are members of the Association of Building
Design.  Roy Covin, the C.E.O., possesses an Architectural degree
as well as degrees in Social Science, Business, and Computer
Science.

Key Company Personnel:

Roy Covin:     Forty-two (42) years old with seventeen (17)
               years experience in Home and Building Design;
               Specializes in Plumbing, Heating, Air and Home
               Building Design, and Electrical Engineering.
               Electrician, State of Georgia; Building Inspector,
               Code Enforcement three (3) years.

H. Cline:      Civil Engineer twenty-two (22) years to present.

W. Mumphrey:   Electrician fifteen (15) years to present.


PAST PROJECTS ARE AS FOLLOWS:

Administrator/Second Mortgage Loan and Application Processor.
     Homeowner Advisor for East Town Home Ownership Program, 1985
     to 1987.  In association with Wire Grass Home Builders, HUD
     and Community Development.
          Ref: Thomas Leonard, Owner
               Wire Grass Properties
               P. O. Box 2253
               Dothan, Al.  36302
               (334) 793-3232

Electrical and Building Consultant
     1989 South Slappey Village Shopping Center
          Ref: Claude Lynch
               2201 Chatham Dr.
               Albany, Ga. 31707
               (912) 432-6370; (912) 883-5800

*Exhibit B p2*

Electrician – Builder – Electrical Engineer
      1990 to 1991 Brooks Furniture/ Shopping Mall and Plaza
            Ref: Robert Brooks
                  1201 West Broad
                  Albany, Ga. 31701
                  (912) 888-3933

Home Design/ Building and Loan Consultant
      1986 to Present Standard Home Builder of Albany
            Ref: Kenneth Pace
                  1612 North Slappey
                  Albany, Ga. 31701
                  (912) 435-7778

Building Designer, Electrical Engineer, and Electrician
      1991 Addition 3200 Sq. Ft. Sanctuary
            Ref: Pastor Ella Davis
                  507 Odom
                  Albany, Ga. 31701
                  (912) 435-4967 (912) 435-2559

Electrical Engineer and Electrician
      1992 Abundant Life Church
            Ref: Pastor Johnny L. Leggett
                  208 East Rd.
                  Albany, Ga. 31705
                  (912) 888-6379

Building Designer, Consultant, Electrical Engineer
      1992 Addition 2400 Sq. Ft. to Church
            Ref: Rev. R. L. Drake
                  Philema Rd.
                  Lee County, Ga.
                  (912) 888-2918

Building Designer/Consultant
      1991 New 5000 Sq. Ft. Hill Brook Building at 1407 Clark
Ave., Albany, Ga.
            Ref: Rev. E. D. Hill
                  1516 East Roosevelt
                  Albany, Ga. 31705
                  (912) 435-4740

Building Designer, Civil Engineer Consultant
      1994 Addition 3200 Sq. Ft. Metal Building
            Ref: Jack Futrell, Owner AAA Used Parts
                  1441 North Washington
                  Albany, Ga. 31701
                  (912) 438-0460

507 ODOM ST.
ALBANY, GA 31701
(912)435-4967

FEBRUARY 17, 2000

TO WHOM IT MAY CONCERN:

MR. ROY COVIN, OWNER OF COVE BUILDER, WAS INSTRUMENTAL IN DESIGNING,
ENGINEERING, THE ELECTRICAL WIRING, AND SERVING AS CONSTRUCTION CONSULTANT
FOR THE CONSTRUCTION OF MY CHURCH.

RESPECTFULLY,

*Pastor Ella Davis*
ELDER ELLA DAVIS

Exhibit D

1201 W. BROAD AVE.
ALBANY, GA 31707
(912)888-3933
229

FEBRUARY 17, 2000

TO WHOM IT MAY CONCERN:

MR. ROY COVIN, OWNER OF COVE BUILDER, ENGINEERED, REWIRED, AND CONSTRUCTED
MY OFFICE HERE AT BROOKS PLAZA. HE ALSO ASSISTED IN ENGINEERING THE WIRING
OF MY OFFICE BUILDING FOR FEDERAL OFFICES ACROSS THE STREET FROM BROOKS
PLAZA.

RESPECTFULLY,

BOB BROOKS

2004

Exhibit E

))

Successful work as
MARTA Electrical/Safety
Inspector.



Exhibit F



Previous
Successful
Electrical work
with MARTA
2004-2005

Early picture of completed computerized/Electrical Albany
Technical College... serving As Asst. Construction Manage
for 27million dollar state of GA project    2002-2004

Exhibit G



A UNIT OF THE GEORGIA DEPARTMENT OF TECHNICAL AND AD
ARCHITECTS: THE PRAD GROUP



Asst. Construction Manager
Parsons Brinskerhoff Construction Services, Inc
Successfully Completed $27 Million State of GA
Education project 2002-2003

$Exhibit \ I \ p1$

Completed wiring checked off, but MARTA say it had
Not been done. Superviors Never checked to see that
the work was done per direction.



IMG_20131031_144747.jpg

https://mail.google.com/_/scs/mail-static/_/js/k=gmail.main.en.2Yp41faz0M4.O/m=m_i,t,it/am=PyAOjuXf24ERh2EH9pNK_...   11/19/2013

Exhibit I
p.2

| TO | Instruction | Wire Size/Type/Gnd(AWG) # | Instruction | FROM |
|---|---|---|---|---|
| | BOOT-R | #14 AWG / BLK / T-3 | TERM | TCT12-E1 |
| | BOOT-R | #14 AWG / BLK / T-4 | TERM | TC15-C1 |
| | BOOT-R | #14 AWG / BLK / T-2 | | T317-B1 |
| | BOOT-R | #14 AWG / BLK / T-3 | | TC315-A1 |
| | BOOT-R | #14 AWG / BLK / T-3 | | T314-A1 |
| | TERM | #14 AWG / BLK / T-3 | | TC314-A1 |
| | TERM | #14 AWG / BLK / T-4C | TC314-A1 | |
| | TERM | #14 AWG / BLK / T-4C | | TC414-C1 |
| | TERM | #14 AWG / BLK / T-4A | | T312-G1 |
| | TERM | #14 AWG / BLK / T-4A | | CT14-G1 |
| | TERM | #14 AWG / BLK / T-4 | | TC114-G1 |
| | TERM | #14 AWG / BLK / T-6 | | TCT1-B |
| | TERM | #14 AWG / BLK / T-6 | | TC309-A2 |
| | TERM | #14 AWG / BLK / T-21 | | TC14-C1 |
| | TERM | #14 AWG / BLK / T-21 | BOOT-R | |
| | TERM | #14 AWG / BLK / X-6A | BOOT-R | |
| | TERM | #14 AWG / BLK / P-6 | TERM | |
| | | #14 AWG / BLK / P-6 | BOOT-R | |
| | | #20 AWG / BLK / CS1 | | |
| | | #20 AWG / BLK / CS1 | | |

Table 3 — Rack to Rack Wire Addition



**COVE COVIN** <covin3712@gmail.com>                                                                    Oct 27

Mike, this is how the follow-up on wiring was presented, and my response as follow:

Please read and let me know what you think.


On 10-23-2013, M. Moore stated to me, "There was a wire discovered missing at a TCFU wiring. Therefore, we want you to green out each wire on the list in the ICP as it is installed, to insure that all wires are installed."  I stated, "This is being done in the wire break down, ringing and the 21 series testing before termination with the Inspector and the Alstom Tech." I also stated, "That this responsible is Alstom's because they have the liable and it is their design." The reasoning is if we mark out in the ICP that a wire or a procedure is done. And the chart, drawing or specs are incorrect and something happens or goes wrong to that effect, we at that point, can be partially liable with the marked ICP as evidence. We should only state that the wire installation or procedure was performed and or date to that affect, as the Test Witness, not that it is correct or placed in the correct position, as it is Alstom's design and any change order is approved by Alstom through Cleveland and should be signed off by Marta as only knowledge of the change not as designer. Therefore any missing wire or part of is strictly the responsibility of Alstom and Cleveland. We as Inspectors should not get into design or corrections, it can come back to bit. As a Project Manager and a Construction Manager for Million dollar Building Projects for many years, this is how we maintain liability upon the Designers.  "This is just a word to the Wise." R. Covin

REVIEWER:  **Frederick Artis**

TYPE OF REVIEW:____Annual____

| | | EXCELLENT 5 | ABOVE AVERAGE 4 | AVERAGE 3 | BELOW AVERAGE 2 | UNSATISFACTORY 1 |
|---|---|---|---|---|---|---|
| A. | **JOB PERFORMANCE:** | | | | | |
| | 1.  Technical Knowledge | | | X | | |
| | 2.  Practical Application of Technical Skills | | | X | | |
| | 3.  Ability to Think and Approach Problems | | | X | | |
| | 4.  Completes Assignment on Time | | | X | | |
| | 5.  Production | | | N/A | | |
| | 6.  Quality of Work | | | X | | |
| | 7.  Tardiness/Absenteeism | | | | X | |
| | 8.  Written Communications | | | X | | |
| | 9.  Oral Communications | | | | | |
| | 10  Project Management and Coordination | | | N/A | | |
| | 11.  Professional or Job Growth Since Last Rating | | | N/A | | |
| B. | **JOB ATTITUDES:** | | | | | |
| | 1.  Dependability | | | X | | |
| | 2.  Morale | | | X | | |
| | 3.  Seeks and Accepts Responsibility | | | X | | |
| | 4.  Offers Constructive Suggestions | | | X | | |
| | 5.  Accepts Assignments Willingly | | | X | | |
| | 6.  Works Well with Others | | | X | | |
| | 7.  Company Loyalty | | | | | |

(Insert "N/A" opposite a rating category that does not apply)

C.  <u>SUPERVISOR COMMENTS</u>

Note Strong Attributes: *Timely submittal of Documentation*

Improvements Needed: *Staying with the Contractor while work is being performed.*

Reviewer Comments:

NOTE:  An additional explanation should accompany this evaluation form for excellent and unsatisfactory ratings.

☐ Accepts or ☐ Rejects                    ☐ Accepts or ☐ Rejects

_____          _____          _____
Immediate Supervisor's Signature          Employee's Signature          Reviewer's Signature

Department Manager's Comments and Signature:

Executive Committee Comments:

*Review Response*
*Submitted with evaluation*

*Exhibit K p.2.*

## 9-9-13

As of 9-9-13, I was informed by Michael Moore lead inspector that, "someone", reported that I was in the restroom for more than thirty (30) minutes. I explained that I did not stay in the restroom more than thirty (30) minutes and I ask him to "show me where I did this", and I also stated to Moore that 'this question was asked, in a meeting, of Michael Cooper of whether an Inspector could leave the TCR, in which Michael Moore was not in attendance of this meeting. I told Moore that Cooper stated, 'Inspector could leave the TCR to go to the restroom but not leave the station while the contractor is working in the TCR", I stated, "that is the rule of most MARTA contracts because some MARTA/MATC Inspector, which I am employed, set up their computers in the Staff room which is in the Station. Moore stated, this was not the rule and Cooper did not state this, he then went to asked Cooper, and I asked Cooper was it true that he stated after the said question that the Inspector could leave the TCR for restroom and breaks but has to stay within the station while the contractor was working.  Cooper stated he did read that, but look it up and write a memo to that affect, Moore evidently proceeded to write to me all duties of the Inspector and placed it in my annual review as if I constantly violate these rules . I told them that I do have a total electronic copy (specs of TCSU Project) and have studied them on my own time. I then ask Moore did He believe the person that reported allegation, he stated, "Yes", and that, "he did not know me like that." I then stated to him that, "they would have to prove this allegation". And why did/would a person report something like this and did not know my work status at that time. I did at one time while working at Sandy Spring go to North Spring TCR with the Contractor (Andy Blanchard) to take measurements of the cable racks.

Two days later Moore asked me to come in read and sign the memo. That same day, Doug O'Donnell ask me to go over my annual review

with Jim ~~Smith~~ Schmid. ~~The memo was attached to the review.~~ The memo was
to me, stated that the Inspector should never leave the station area,
which I never do, unless it is lunch break or work with the Contractor.
It also stated, If the contractor/Inspector is working in the TCR or TPSS
the inspector should remain in the work area except for restroom or
contractor scheduled lunch or breaks. And that is what I have done on
this project this past fourteen (14) months. The review was done by
Moore and seemly to this review reflects the report of me going to the
restroom and a result of me riding the train, being delayed at Indian
Creek 15 minutes late on 9-2-13,  inwhich called the Contractor at 6:45
from Linbeng station.

This memo is written to me as through I have not performed my duties
in a proper manner with no consideration to all me dedicated work
on this project, my Manger for the pass thirteen months (13) was
Enda Raines who is totally aware of my cooperation, dedication, and
attentiveness to the TCSU project and more likely given me a more
accurate annual review.  It also deprivation my character and this type of
behavior creates hostile environments in the work place.
 I challenge this review and to show the percentage of which this
review is formed. I am requesting the department manager re-evaluate
this review.  I have performed my duties in this manner for the pass
(14) months, three hundred eighty eight days (388) days, in which this
review does not reflect my *overall performance during that period of
time, my intelligence, my professionalism* and my life time dedication
and my successes of any project I have taken on, in which my attached
resume will attest.

I was transferred to MARTA/RTP because of my success
completing these projects as follow: a computerized college
classroom build, a Gym and an Indoor Pool totaling forty one
million dollars ($41,000,000) for the State of Georgia as a

Construction Manager for Parson Brinkerhoff Const. Ser. In-which
RTP was its sister company. This allegation is totally untrue; I
have the legal right to go to the restroom and take breaks while
at work as an Inspector with the MARTA/MATC TCSU project.
We are not barbaric. I resent the fact that someone would attempt
to diminish my character and professionalism for something so
minuscule. after all my hard work and dedication to this project and
the installation of (11) Train Control Fields Units, four (4) SFUs,
fiber, Patch Panels, Survey of IO points and conduit/wiring on
this project, at the same time being on time, and learning the
insulation system of the TCFU and the SFU. I also resent the
fact that my comrades would except such an petty allegation
and would attempt to use it as a matter   of fact. The person
that would make such an allegation is petty and minuscule.  The
question here is what is the percent of times that I have been late
or absent, I have never been belatedly absent except for vacation
which was approved prior, what is this person's motivation.

# DAILY TRACK TIME SHEET

*Exhibit L*

*P1*

**marta**
METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY

**DATE:** _10-18-13_    **REPORT BY:** _K Cowin_

**CONTRACT # AND TITLE** _TCB J_   (_TCF J_)

**EVENT#**    Bid (pay) Item#    **D.F., Special or Ballasted Track**

**LOCATION:** _N 230 Beorhaven_    **TRACK:**

**FLAGPERSON(S)** _—_

**RESTRICTION #:** _____ **TIME REQUESTED: Date:** _____ **Time:** _____ am : pm

| : Hour Outage | Track Access Scheduled (Date/Time) | Track Access Actual (Date/Time) | Crew at Work Site Actual (Date/Time) | Contractor Returned Track to MARTA Flagperson Actual (Date/Time) |
|---|---|---|---|---|
| **Start Time:** | Date: 7-16-13 | Date: 7-18-13 | Date: 7-18-13 | Date: 7-18-13 |
| | 7 am : pm | 7 am : pm | 7 am : pm | 3:30 am : pm |
| **End Time:** | Date: 3:30 | Comments: | | |
| | am : pm | | | |

**CALCULATIONS:**

**TRACK TIME:** _____ Hrs. (To be completed by the Resident Engineer: _____).

**STAND-BY TIME:** _____ Hrs. (To be completed by the Resident Engineer: _____).

Contractor Personel by Name: (non-salary)

| | |
|---|---|
| 1. Dinare Love | 13. |
| 2. Ben Vopz | 14. |
| 3. Kyle Henderson | 15. |
| 4. Alan Earle | 16. |
| 5. | 17. |
| 6. | 18. |
| 7. | 19. |
| 8. | 20. |
| 9. | 21. |
| 10. | 22. |
| 11. | 23. |
| 12. | 24. |

Was Contractor mobilized at the access point prior to the scheduled start time:    Y: N: Actual Time Mobilized _____
Did Contractor elect to work after a period of delay greater than 1 hour?    Y: N: N/A
Did Contractor crew remain mobilized until 1:00 a.m.?    Y: N: N/A
If work cancelled by MARTA, when was work cancelled?   Date: _____ Time: _____ a.m. : p.m.
If work cancelled by Contractor, when was work cancelled?   Date: _____ Time: _____ a.m. : p.m.
Track returned to RSCC.   Date: _____ Time: _____ a.m. : p.m.
Test Train cleared through work area.   Date: _____ Time: _____ a.m. : p.m.

## Track Hours and Personnel Present Verified by:

**AUTHORITY REPRESENTATIVE:** _____

**CONTRACTOR REPRESENTATIVE:** _____

**AGREED AS TO SUBSTANCE:**

_____    Date: _____
Resident Engineer

COPIES: White (Original) File; Green (1st Copy) Contractor; Canary (2nd Copy) OE; Pink (3rd Copy) Inspector; Goldenrod (4th Copy) Contractor - Field

**METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY**

# DAILY TRACK TIME SHEET

*Exhibit L*

*p.2*

| | | | |
|---|---|---|---|
| **DATE:** 10-21-13 | **REPORT BY:** R. Corral (Esc P O) | | |
| **CONTRACT # AND TITLE** | TCSV | | |
| **EVENT#** | Bid (pay) Item# | **D.F., Special or Ballasted Track** | |
| **LOCATION:** N 230 | | **TRACK:** | |
| **FLAGPERSON(S)** | | | |
| **RESTRICTION #:** | TIME REQUESTED: Date: | **Time:** | am : pm |

| : Hour Outage | Track Access Scheduled (Date/Time) | Track Access Actual (Date/Time) | Crew at Work Site Actual (Date/Time) | Contractor Returned Track to MARTA Flagperson Actual (Date/Time) |
|---|---|---|---|---|
| **Start Time:** | Date: 10-21-13 am: pm | Date: 10-21-13 am: pm | Date: 10-21-13 am: pm | Date: 10-21-13 ⊃3⊃ am: pm |
| **End Time:** | Date: 3:30 am: pm | Comments: | | |

**CALCULATIONS:**

TRACK TIME: _____ Hrs. (To be completed by the Resident Engineer: _____ ).

STAND-BY TIME: _____ Hrs. (To be completed by the Resident Engineer: _____ ).

Contractor Personel by Name: (non-salary)

| | | | |
|---|---|---|---|
| 1. Alan Enass | | 13. | |
| 2. Donne Estovr | | 14. | |
| 3. Ben Pole | | 15. | |
| 4. Kyle Nenopesson | | 16. | |
| 5. | | 17. | |
| 6. | | 18. | |
| 7. | | 19. | |
| 8. | | 20. | |
| 9. | | 21. | |
| 10. | | 22. | |
| 11. | | 23. | |
| 12. | | 24. | |

Was Contractor mobilized at the access point prior to the scheduled start time:  Ⓨ: N: Actual Time Mobilized _9 am_
Did Contractor elect to work after a period of delay greater than 1 hour?  Y: N: N/A
Did Contractor crew remain mobilized until 1:00 a.m.?  Y: N: N/A
If work cancelled by MARTA, when was work cancelled?  Date: _____ Time: _____ a.m.: p.m.
If work cancelled by Contractor, when was work cancelled?  Date: _____ Time: _____ a.m.: p.m.
Track returned to RSCC.  Date: _____ Time: _____ a.m.: p.m.
Test Train cleared through work area.  Date: _____ Time: _____ a.m.: p.m.

**Track Hours and Personnel Present Verified by:**

AUTHORITY REPRESENTATIVE: _____

CONTRACTOR REPRESENTATIVE: _____

**AGREED AS TO SUBSTANCE:**

_____  Date: _____
Resident Engineer

COPIES: White (Original) File; Green (1st Copy) Contractor; Canary (2nd Copy) OE; Pink (3rd Copy) Inspector; Goldenrod (4th Copy) Contractor - Field

# marta

METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY

## DAILY TRACK TIME SHEET

*Exhibit L p3*

| DATE: | 10-22-13 | REPORT BY: | K Coury |
|---|---|---|---|
| CONTRACT # AND TITLE | | TCSU (TCFU) | |
| EVENT# | Bid (pay) Item# | | D.F., Special or Ballasted Track |
| LOCATION: | N 230 | | TRACK: |
| FLAGPERSON(S) | | | |
| RESTRICTION #: | ——— TIME REQUESTED: Date: | | Time: am : pm |

| : Hour Outage | Track Access Scheduled (Date/Time) | Track Access Actual (Date/Time) | Crew at Work Site Actual (Date/Time) | Contractor Returned Track to MARTA Flagperson Actual (Date/Time) |
|---|---|---|---|---|
| Start Time: | Date: 10-22-13 7 am : pm | Date: 10-22-13 7 am : pm | Date: 10-22-13 7 am : pm | Date: 10-22-13 230 am : pm |
| End Time: | Date: 330 am : pm | Comments: | | |

CALCULATIONS:

TRACK TIME: _____ Hrs. (To be completed by the Resident Engineer: _____ ).

STAND-BY TIME: _____ Hrs. (To be completed by the Resident Engineer: _____ ).

Contractor Personel by Name: (non-salary)

| | | | |
|---|---|---|---|
| 1. | DONNELL LOVE | 13. | |
| 2. | BEN DOPE | 14. | |
| 3. | ALAN EARLS | 15. | |
| 4. | | 16. | |
| 5. | | 17. | |
| 6. | | 18. | |
| 7. | | 19. | |
| 8. | | 20. | |
| 9. | | 21. | |
| 10. | | 22. | |
| 11. | | 23. | |
| 12. | | 24. | |

Was Contractor mobilized at the access point prior to the scheduled start time:    Y: N: Actual Time Mobilized _____
Did Contractor elect to work after a period of delay greater than 1 hour?    Y: N: N/A
Did Contractor crew remain mobilized until 1:00 a.m.?    Y: N: N/A
If work cancelled by MARTA, when was work cancelled?   Date: _____ Time: _____ a.m. : p.m.
If work cancelled by Contractor, when was work cancelled?   Date: _____ Time: _____ a.m. : p.m.
Track returned to RSCC.   Date: _____ Time: _____ a.m. : p.m.
Test Train cleared through work area.   Date: _____ Time: _____ a.m. : p.m.

## Track Hours and Personnel Present Verified by:

AUTHORITY
REPRESENTATIVE: _____

CONTRACTOR
REPRESENTATIVE: _____

AGREED AS TO SUBSTANCE: _____

_____
Resident Engineer    Date: _____

COPIES: White (Original) File; Green (1st Copy) Contractor; Canary (2nd Copy) OE; Pink (3rd Copy) Inspector; Goldenrod (4th Copy) Contractor - Field

**marta** ®
METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY

# DAILY TRACK TIME SHEET  *Exhibit L*
*p4*

**DATE:** 10-23-13   **REPORT BY:** R Cruce

**CONTRACT # AND TITLE** TCSU (TCFU)

**EVENT#** _____ Bid (pay) Item# _____ **D.F., Special or Ballasted Track**

**LOCATION:** N 230   **TRACK:**

**FLAGPERSON(S)** ___

**RESTRICTION #:** _____ **TIME REQUESTED: Date:** _____ **Time:** _____ am : pm

| : Hour Outage | Track Access Scheduled (Date/Time) | Track Access Actual (Date/Time) | Crew at Work Site Actual (Date/Time) | Contractor Returned Track to MARTA Flagperson Actual (Date/Time) |
|---|---|---|---|---|
| **Start Time:** | Date: 10-23-13  ~7 am : pm | Date: 10-23-13  ~7 am : pm | Date: 10-23-13  ~7 am : pm | Date: 10-23-13  330 am : pm |
| **End Time:** | Date:  330 am : pm | Comments: | | |

**CALCULATIONS:**

**TRACK TIME:** _____ Hrs. (To be completed by the Resident Engineer: _____ ).

**STAND-BY TIME:** _____ Hrs. (To be completed by the Resident Engineer: _____ ).

Contractor Personel by Name: (non-salary)

| | | | |
|---|---|---|---|
| 1. ALAN EARLS | | 13. | |
| 2. DONN ELL DOVE | | 14. | |
| 3. BEN POPE | | 15. | |
| 4. KYLE HENDERSON | | 16. | |
| 5. | | 17. | |
| 6. | | 18. | |
| 7. | | 19. | |
| 8. | | 20. | |
| 9. | | 21. | |
| 10. | | 22. | |
| 11. | | 23. | |
| 12. | | 24. | |

Was Contractor mobilized at the access point prior to the scheduled start time: **Y: N:** Actual Time Mobilized _____
Did Contractor elect to work after a period of delay greater than 1 hour? **Y: N: N/A**
Did Contractor crew remain mobilized until 1:00 a.m.? **Y: N: N/A**
If work cancelled by MARTA, when was work cancelled? Date: _____ Time: _____ a.m. : p.m.
If work cancelled by Contractor, when was work cancelled? Date: _____ Time: _____ a.m. : p.m.
Track returned to RSCC. Date: _____ Time: _____ a.m. : p.m.
Test Train cleared through work area. Date: _____ Time: _____ a.m. : p.m.

**Track Hours and Personnel Present Verified by:**

**AUTHORITY REPRESENTATIVE:** _____

**CONTRACTOR REPRESENTATIVE:** _____

**AGREED AS TO SUBSTANCE:**

Date: _____

_____
Resident Engineer

COPIES: White (Original) File; Green (1st Copy) Contractor; Canary (2nd Copy) OE; Pink (3rd Copy) Inspector; Goldenrod (4th Copy) Contractor - Field

**marta** ®
METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY

# DAILY TRACK TIME SHEET

Exhibit L
p5

| | | |
|---|---|---|
| **DATE:** 10-24-13 | **REPORT BY:** R Coul | |
| **CONTRACT # AND TITLE** TCS ✓ (TCFU) | | |
| **EVENT#** | Bid (pay) Item# | D.F., Special or Ballasted Track |
| **LOCATION:** N230 | | **TRACK:** |
| **FLAGPERSON(S)** | | |
| **RESTRICTION #:** ——— TIME REQUESTED: Date: | | Time:          am : pm |

| : Hour Outage | Track Access Scheduled (Date/Time) | Track Access Actual (Date/Time) | Crew at Work Site Actual (Date/Time) | Contractor Returned Track to MARTA Flagperson Actual (Date/Time) |
|---|---|---|---|---|
| **Start Time:** | Date: 10-24-13 | Date: 10-24-13 | Date: 10-24-13 | Date: 10-24-13 |
| | 7      am : pm | 7      am : pm | 7      am : pm | 3:30 am : pm |
| **End Time:** | Date: 3:30 am/pm | **Comments:** | | |

**CALCULATIONS:**

**TRACK TIME:** _____  Hrs. (To be completed by the Resident Engineer: _____).

**STAND-BY TIME:** _____  Hrs. (To be completed by the Resident Engineer: _____).

Contractor Personel by Name: (non-salary)

| | | |
|---|---|---|
| 1. Alan Bulls | 13. | |
| 2. Dawnru Love | 14. | |
| 3. Ben Pope | 15. | |
| 4. Kyle Henderbin | 16. | |
| 5. | 17. | |
| 6. | 18. | |
| 7. | 19. | |
| 8. | 20. | |
| 9. | 21. | |
| 10. | 22. | |
| 11. | 23. | |
| 12. | 24. | |

Was Contractor mobilized at the access point prior to the scheduled start time:     Y: N: Actual Time Mobilized _____

Did Contractor elect to work after a period of delay greater than 1 hour?     Y: N: N/A

Did Contractor crew remain mobilized until 1:00 a.m.?     Y: N: N/A

If work cancelled by MARTA, when was work cancelled?     Date: _____ Time: _____ a.m. : p.m.

If work cancelled by Contractor, when was work cancelled?     Date: _____ Time: _____ a.m. : p.m.

Track returned to RSCC.     Date: _____ Time: _____ a.m. : p.m.

Test Train cleared through work area.     Date: _____ Time: _____ a.m. : p.m.

## Track Hours and Personnel Present Verified by:

**AUTHORITY REPRESENTATIVE:**

**CONTRACTOR REPRESENTATIVE:**

## AGREED AS TO SUBSTANCE:

_____     Date: _____

Resident Engineer

COPIES: White (Original) File; Green (1st Copy) Contractor; Canary (2nd Copy) OE; Pink (3rd Copy) Inspector; Goldenrod (4th Copy) Contractor - Field

# DAILY TRACK TIME SHEET

*Exhibit L*

*Pb*

**MARTA**
METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY

| | |
|---|---|
| **DATE:** 10-25-13 | **REPORT BY:** K Cou — |
| **CONTRACT # AND TITLE** TCSU (TCFU) | |
| **EVENT#** | Bid (pay) Item# | D.F., Special or Ballasted Track |
| **LOCATION:** N-230 | **TRACK:** |
| **FLAGPERSON(S)** | |
| **RESTRICTION #:** _____ TIME REQUESTED: Date: | Time: am : pm |

| : Hour Outage | Track Access Scheduled (Date/Time) | Track Access Actual (Date/Time) | Crew at Work Site Actual (Date/Time) | Contractor Returned Track to MARTA Flagperson Actual (Date/Time) |
|---|---|---|---|---|
| **Start Time:** | Date: 10-25-13 7 am : pm | Date: 18-25-13 9 am > pm | Date: 18-25-13 7 am : pm | Date: 18-25-13 3:30 am : pm |
| **End Time:** | Date: 3:30 am : pm | Comments: | | |

**CALCULATIONS:**

TRACK TIME: _____ Hrs. (To be completed by the Resident Engineer: _____ ).

STAND-BY TIME: _____ Hrs. (To be completed by the Resident Engineer: _____ ).

Contractor Personel by Name: (non-salary)

| | |
|---|---|
| 1. Donnell Love | 13. |
| 2. Kyle Mendiason | 14. |
| 3. Alan Balls | 15. |
| 4. Thomas Ambrosia | 16. |
| 5. | 17. |
| 6. | 18. |
| 7. | 19. |
| 8. | 20. |
| 9. | 21. |
| 10. | 22. |
| 11. | 23. |
| 12. | 24. |

Was Contractor mobilized at the access point prior to the scheduled start time:    Y: N: Actual Time Mobilized _____

Did Contractor elect to work after a period of delay greater than 1 hour?    Y: N: N/A

Did Contractor crew remain mobilized until 1:00 a.m.?    Y: N: N/A

If work cancelled by MARTA, when was work cancelled?   Date:_____ Time:_____ a.m. : p.m.

If work cancelled by Contractor, when was work cancelled?  Date:_____ Time:_____ a.m. : p.m.

Track returned to RSCC.   Date:_____ Time:_____ a.m. : p.m.

Test Train cleared through work area.   Date:_____ Time:_____ a.m. : p.m.

## Track Hours and Personnel Present Verified by:

| AUTHORITY REPRESENTATIVE: | CONTRACTOR REPRESENTATIVE: |
|---|---|

**AGREED AS TO SUBSTANCE:**

Date: _____

_____
Resident Engineer

COPIES: White (Original) File; Green (1st Copy) Contractor; Canary (2nd Copy) OE; Pink (3rd Copy) Inspector; Goldenrod (4th Copy) Contractor - Field

**marta** ®
METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY

# DAILY TRACK TIME SHEET

*Exhibit L*

P

**DATE:** *10-28-13*   **REPORT BY:** *R. Couns*

**CONTRACT # AND TITLE**

**EVENT#** Bid (pay) Item# | **D.F., Special or Ballasted Track**

**LOCATION:** *5130* | **TRACK:**

**FLAGPERSON(S)**

**RESTRICTION #:** ——— **TIME REQUESTED: Date:** | **Time:** am : pm

| : Hour Outage | Track Access Scheduled (Date/Time) | Track Access Actual (Date/Time) | Crew at Work Site Actual (Date/Time) | Contractor Returned Track to MARTA Flagperson Actual (Date/Time) |
|---|---|---|---|---|
| **Start Time:** | Date: *10-28-13* | Date: *10-28-13* | Date: *10-28-13* | Date: *10-28-13* |
| | *7* am : pm | *7* am : pm | *7* am : pm | *3:30* am : pm |
| **End Time:** | Date: *3:30* am : pm | Comments: | | |

**CALCULATIONS:**

**TRACK TIME:** _____ Hrs. (To be completed by the Resident Engineer: _____ ).

**STAND-BY TIME:** _____ Hrs. (To be completed by the Resident Engineer: _____ ).

Contractor Personel by Name: (non-salary)

| | |
|---|---|
| 1. *KYLE HENDERSON* | 13. |
| 2. *VANSENT DUNBAR* | 14. |
| 3. *DONNIELL LOVE* | 15. |
| 4. *WILL GARDNER* | 16. |
| 5. *JOHN CURRIN* | 17. |
| 6. *ANDY MITCHELL* | 18. |
| 7. | 19. |
| 8. | 20. |
| 9. | 21. |
| 10. | 22. |
| 11. | 23. |
| 12. | 24. |

Was Contractor mobilized at the access point prior to the scheduled start time: Ⓨ N: Actual Time Mobilized *7* *4am*
Did Contractor elect to work after a period of delay greater than 1 hour?     Y: N: N/A
Did Contractor crew remain mobilized until 1:00 a.m.?                         Y: N: N/A
If work cancelled by MARTA, when was work cancelled?   Date: _____   Time: _____ a.m. : p.m.
If work cancelled by Contractor, when was work cancelled? Date: _____   Time: _____ a.m. : p.m.
Track returned to RSCC.                                 Date: _____   Time: _____ a.m. : p.m.
Test Train cleared through work area.                   Date: _____   Time: _____ a.m. : p.m.

**Track Hours and Personnel Present Verified by:**

**AUTHORITY REPRESENTATIVE:** _____

**CONTRACTOR REPRESENTATIVE:** _____

**AGREED AS TO SUBSTANCE:**

_____ **Date:** _____
Resident Engineer

# marta
**METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY**

## DAILY TRACK TIME SHEET

*Exhibit L*

*p8*

**DATE:** 10-30-13    **REPORT BY:** R Cowl

| | |
|---|---|
| **CONTRACT # AND TITLE** | TLSU (TCFU) |
| **EVENT#** | Bid (pay) Item#        D.F., Special or Ballasted Track |
| **LOCATION:** | 5130        **TRACK:** |
| **FLAGPERSON(S)** | |
| **RESTRICTION #:** | TIME REQUESTED: Date:        Time:        am : pm |

| : Hour Outage | Track Access Scheduled (Date/Time) | Track Access Actual (Date/Time) | Crew at Work Site Actual (Date/Time) | Contractor Returned Track to MARTA Flagperson Actual (Date/Time) |
|---|---|---|---|---|
| **Start Time:** | Date: 10-30-13  7 am : pm | Date: 10-30-13  7 am : pm | Date: 10-30-13  7 am : pm | Date: 10-30-13  3:50 am : pm |
| **End Time:** | Date: 5:50 am : pm | Comments: | | |

**CALCULATIONS:**

TRACK TIME: _____ Hrs. (To be completed by the Resident Engineer: _____ ).

STAND-BY TIME: _____ Hrs. (To be completed by the Resident Engineer: _____ ).

Contractor Personel by Name: (non-salary)

| | | | | |
|---|---|---|---|---|
| 1. | DONNELL LOVE | clw | 13. | |
| 2. | BRYAN EDGERTON | '' | 14. | |
| 3. | WILL GARDNER | '' | 15. | |
| 4. | JOHN CUMMINS | Alg-- | 16. | |
| 5. | ALAN ENGLS | clfv | 17. | |
| 6. | | | 18. | |
| 7. | | | 19. | |
| 8. | | | 20. | |
| 9. | | | 21. | |
| 10. | | | 22. | |
| 11. | | | 23. | |
| 12. | | | 24. | |

Was Contractor mobilized at the access point prior to the scheduled start time?    Y:  N:  Actual Time Mobilized _____
Did Contractor elect to work after a period of delay greater than 1 hour?    Y:  N:  N/A
Did Contractor crew remain mobilized until 1:00 a.m.?    Y:  N:  N/A
If work cancelled by MARTA, when was work cancelled?    Date: _____ Time: _____ a.m. : p.m.
If work cancelled by Contractor, when was work cancelled?    Date: _____ Time: _____ a.m. : p.m.
Track returned to RSCC.    Date: _____ Time: _____ a.m. : p.m.
Test Train cleared through work area.    Date: _____ Time: _____ a.m. : p.m.

## Track Hours and Personnel Present Verified by:

**AUTHORITY REPRESENTATIVE:** _____

**CONTRACTOR REPRESENTATIVE:** _____

## AGREED AS TO SUBSTANCE:

_____        Date: _____
**Resident Engineer**

COPIES: White (Original) File;  Green (1st Copy) Contractor;  Canary (2nd Copy) OE;  Pink (3rd Copy) Inspector;  Goldenrod (4th Copy) Contractor - Field

# DAILY TRACK TIME SHEET

**marta** ®
METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY

Exhibit L

p9

| DATE: 10-31-13 | REPORT BY: K-Cain | | |
|---|---|---|---|
| **CONTRACT # AND TITLE** TCSU (TCFC) | | | |
| **EVENT#** | Bid (pay) Item# | D.F., Special or Ballasted Track | |
| **LOCATION:** 5130 | | TRACK: | |
| **FLAGPERSON(S)** — | | | |
| **RESTRICTION #:** — | TIME REQUESTED: Date: | Time: | am : pm |

| : Hour Outage | Track Access Scheduled (Date/Time) | Track Access Actual (Date/Time) | Crew at Work Site Actual (Date/Time) | Contractor Returned Track to MARTA Flagperson Actual (Date/Time) |
|---|---|---|---|---|
| **Start Time:** | Date: 31-13  -7 am : pm | Date: 10-31-13  7 am : pm | Date: 10-31-13  7 am : pm | Date: 10-31-13  3 am : pm |
| **End Time:** | Date:  3 am : pm | Comments: | | |

**CALCULATIONS:**

TRACK TIME: _____  _____  Hrs. (To be completed by the Resident Engineer: _____).

STAND-BY TIME: _____  Hrs. (To be completed by the Resident Engineer: _____).

Contractor Personel by Name: (non-salary)

| | | | |
|---|---|---|---|
| 1. BRYAN EDGERTON | CLEV | 13. | |
| 2. DARNELL LOVE | :1 | 14. | |
| 3. WILL GARDNER | 11 | 15. | |
| 4. JOHN CORBIN | ALSTM | 16. | |
| 5. | | 17. | |
| 6. | | 18. | |
| 7. | | 19. | |
| 8. | | 20. | |
| 9. | | 21. | |
| 10. | | 22. | |
| 11. | | 23. | |
| 12. | | 24. | |

Was Contractor mobilized at the access point prior to the scheduled start time?   Ⓨ N: Actual Time Mobilized ____ 7am

Did Contractor elect to work after a period of delay greater than 1 hour?   Y: N: N/A

Did Contractor crew remain mobilized until 1:00 a.m.?   Y: N: N/A

| | | |
|---|---|---|
| If work cancelled by MARTA, when was work cancelled? | Date: | Time: _____ a.m. : p.m. |
| If work cancelled by Contractor, when was work cancelled? | Date: | Time: _____ a.m. : p.m. |
| Track returned to RSCC. | Date: | Time: _____ a.m. : p.m. |
| Test Train cleared through work area. | Date: | Time: _____ a.m. : p.m. |

**Track Hours and Personnel Present Verified by:**

AUTHORITY REPRESENTATIVE: _____

CONTRACTOR REPRESENTATIVE: _____

**AGREED AS TO SUBSTANCE:**

_____   Date: _____

Resident Engineer

*Exhibit M pl*

EXHIBIT M – This is the audio recording of the Plaintiff's Exits

Interview conducted by MATC Managers. The audio recording covers the key points in the Plaintiff's Wrongful Termination, Retaliation, Defamation of Character, and Harassment suit.  The points include:

1. On the audio recording Plaintiff explained that Michael Cooper never talked to him about any concerns he may have had about his work. Cooper also based his terminated of the Plaintiff on hearsay, on personal retaliation and without due process which is a violation of the Plaintiff's Civil Rights.

2. On the audio MATC Managers, Jim Schmid and Doug O'Donnell explained that Cooper said he did not want the Plaintiff to work on the project anymore because of incomplete wiring checks, documentation issues, not following instructions and making an email suggestion. However, the Plaintiff explained that Cooper never talked to him about any concerns. All instructed work and documentation was completed by the Plaintiff. Plaintiff explains that Cooper never checked. The Plaintiff took photos of all work that was assigned and completed. Also Cooper instructed the Plaintiff to complete time log documents that were never collected, but were completed by the Plaintiff and are in his possession.

3. Finally, the audio reflect the Managers stating that the reasons Cooper wanted the Plaintiff of the job is because Cooper got mad over an email the Plaintiff sent Cooper which  his immediate supervisor advised him to seen.

*Exhibit M p2*

4. The Managers stated on the audio that, "Cooper was mad and that is what instigated the whole thing." As a result Cooper slandered the Plaintiff's name to the MATC Managers by trying to make the Plaintiff seem incompetent.

A DVD copy of the entire November 1, 2013 Exit Interview is available.

*Exhibit N₁₉₋₁*



METROPOLITAN ATLANTA TRANSIT CONSULTANTS

a joint venture of AECOM, Williams-Russell and Johnson, and Atkins

PA.019a1.2.

**MATC EXIT INTERVIEW**

Name: Roy Covin

Date of Departure: 11/1/13

Department: Construction

Current Position: Inspector (TCSU Project)

Supervisor: Mike Swaney / Doug O'Donnell

Person Conducting the Interview: SC HMIO

Date: 11/1/13

**The reason(s) that you are leaving your position is (are):** [Note all that apply to the consultant's situation. Number them in order of importance 1 = most important, etc.]

___Moving out of the area

___Difficulty with work and family scheduling

___Limited career advancement opportunities

___Inadequate compensation and/or benefits

___Unhappy with job duties

___Unhappy with working conditions

___Unhappy with supervision

___Family responsibilities

___Pursuing new opportunities

___A job offer you can't refuse

√ Reduction in Force (Involuntary)

___Other: _____



State of Georgia
Department of Labor

## SEPARATION NOTICE

*Exhibit N*

1. Employee's Name  **Covin, Roy C.**                    2. S. S. No.  **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**

   a. State any other name(s) under which employee worked.  _____

3. Period of Last Employment:  From
                                     **07/23/2012**          To              **11/01/2013**

4. REASON FOR SEPARATION:

   a. LACK OF WORK  ☐

   b. If for other than lack of work, state fully and clearly the circumstances of the separation:

   **Client's request.**   _____

   _____

   _____

5. Employee received payment for: (Severance Pay, Separation Pay, Wages-In-Lieu of Notice, bonus, profit sharing, etc.)
   (DO NOT include vacation pay or earned wages)
   **Severance Pay**          in the amount of $  **1,200.00**      for      period  **11/04/2013**    to    **11/08/2013**
                                               **gross**         from
   _____ (type of payment)

   Date above payment(s) was/will be issued to employee  _____

   IF EMPLOYEE RETIRED, furnish amount of retirement pay and what percentage of contributions were paid by the employer.
   _____ per month  _____ % of contributions paid by employer

6. Did this employee earn at least $3,000.00 in your employ?   YES  ☒   NO   If NO, how much?  $ _____
                                                               ☐
                                                                        Average Weekly Wage  _____

Employer's
Name   **Williams-Russell and Johnson, Inc.**

Address
       **44 Broad Street, NW, Suite 400**
       (Street or RFD)
City  **Atlanta**          State  **GA**        **30303**
                                        ZIP Code

Employer's
Telephone No.  **404**          **853-6800**
          (Area Code)          (Number)

### NOTICE TO EMPLOYER

At the time of separation, you are required by the Employment Security Law, OCGA Section 34-8-190(c), to provide the employee with this document, properly executed, giving the reasons for separation.  If you subsequently receive a request for the same information on a DOL-1199FF, you may attach a Copy of this form (DOL-800) as a part of your response.

Ga. D.O.L. Account Number  **322 582-08**
(Number shown on Employer's Quarterly Tax and Wage Report, Form DOL-4.)

I CERTIFY that the above worker has been separated from work and the information furnished hereon is true and correct.  This report has been handed to or mailed to the worker.

*Linnie Adams-White*

Signature of Official, Employee of the Employer
or authorized agent for the employer

**Director**
Title of Person Signing

**November 1, 2013**
Date Completed and Released to Employee

### NOTICE TO EMPLOYEE
OCGA SECTION 34-8-190(C) OF THE EMPLOYMENT SECURITY LAW REQUIRES THAT YOU TAKE THIS NOTICE TO THE GEORGIA DEPARTMENT OF LABOR FIELD SERVICE OFFICE IF YOU FILE A CLAIM FOR UNEMPLOYMENT INSURANCE BENEFITS.

SEE REVERSE SIDE FOR ADDITIONAL INFORMATION.

DOL-800 (R-8/02)

Exhibit O

## Schmid, Jim - MATC

| | |
|---|---|
| **From:** | Cooper, Michael G. <mcooper@itsmarta.com> |
| **Sent:** | Monday, October 28, 2013 2:30 PM |
| **To:** | Schmid, Jim - MATC; O'Donnell, Doug - MATC |
| **Cc:** | Khuman, Manmohan |
| **Subject:** | Roy Covin |

**Importance:**    High

Mr. Schmid and Mr. O'Donnell,

Mr. Roy Covin began working as a TCSU project inspector in August, 2012.  When he first started, the project was focused on pre-testing activities and field surveys, and Mr. Covin performed adequately.  More recently over the past several months as the project has shifted to more aggressive installation and testing activities requiring electrical and technical skills, Mr. Covin has not demonstrated the skills and experience desired and required for this project.  On several occasions, Mr. Covin has not performed adequately and when this was brought to his attention in order to try to coach him to develop his skills and follow directions, he has resisted and pointed blame on others or on procedures, processes, etc.  Mr. Covin has demonstrated resistance and has been very uncooperative for very simple things like completion of project forms, properly documented written reports, performing the key roles of an inspector, etc.  This behavior has not improved but continues to escalate.  The TCSU project management team does not have time to argue or try to convince Mr. Covin of what is expected and required of his performance.

Effective Friday, November 1, 2013, the TCSU project will no longer require the services of Mr. Covin.  Please re-assign him as appropriate.  Thank you.

## Michael G. Cooper — Project Manager TCSU

**marta** | METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY

2400 Piedmont Road, NE • Atlanta, Georgia  30324-3330 • (404) 848-6156 • cell (404) 392-2900 •
mcooper@itsmarta.com • www.itsmarta.com

Please consider the environment before printing this email.

1

*Exhibit R* pg 1

 **williams-russell and johnson, inc.**
engineers • architects • planners

The Grant Building
44 Broad Street, NW
Suite 900
Atlanta, GA 30303-2356
www.wrjinc.com

July 16, 2012

Mr. Roy C. Covin
1017 Princeton Park Drive
Lithonia, GA 30058

**RE:    Employment with Williams-Russell and Johnson, Inc.**

Dear Mr. Covin:

This correspondence is to apprise you of our offer of employment with Williams-Russell and Johnson, Inc. During the month of July 2012 your work will be part-time (zero to 30 hours per week). However, it is anticipated that beginning August 2012, your employment status will be changed to full-time. Accordingly, you will be added to the firm's roster of employees effective Monday, July 23, 2012.

Work performed by you will be compensated at the rate of $30.00 per hour. Fringe benefits (i.e., sick leave, holidays, vacation, insurance, etc.) are not available to our part-time employees. Deductions related to federal, state and FICA taxes from your compensation will be made in accordance with Federal and State Regulations.

Should you accept our offer of employment, you will be assigned to the position of Field Signal Inspector in the WR&J/MATC Joint Venture (10-50-40) at the hourly rate of $30.00 per hour. This seconded position, to Metropolitan Atlanta Rapid Transit Authority (MARTA), reports directly to Mr. Michael Cooper, Electrical Inspector, MARTA, and is under the MATC oversight of Mr. Douglas O'Donnell, Acting Senior Manager for Construction Management and Administration. Your work location will be at the MARTA Headquarters Building, 2424 Piedmont Road, NE, Atlanta, GA 30324.

Pleased be advised, we consider the Field Signal Inspector position non-exempt to the overtime provisions of the Fair Labor Standards Act. Working in this position, however, does not preclude your being requested to perform other duties which you are qualified to perform.

Mr. O'Donnell will provide you with the appropriate instructions for your assignment. You will only work the hours designated and assigned, to you, on a weekly basis; during the month of July 2012, which may be zero to 30 hours.

Contact Ms. Linnie Adams-White, Director of Office Administration, Human Resources & Business Development Assistant at (404-557-3114) for the appropriate instructions on

*Exhibit R* pg 2

Mr. Roy C. Covin
July 16, 2012
Page 2

completing certain personnel forms which are pertinent to the firm's recordkeeping system (i.e., tax forms, Employee I-9 Form, Harassment Policy Form, Electronic Mail Policy Form, etc.).

For future reference your administrative, employment or personnel concerns may be addressed by Ms. Adams-White (404) 557-3114. Ms. Linda C. Miranda, Chief Financial Officer, can address accounting concerns, time report entries, pay check matters, financial and payroll questions; (404) 441-9892.

The WR&J normal work hours are 8:00 a.m. to 5:00 p.m., Monday through Friday, including one (1) hour for lunch; however, you will be expected to follow MATC weekly work hours.

On your first day of employment you will need to provide two (2) of the documents on the "List of Acceptable Documents" (enclosed) for verification of your employment eligibility.

We are pleased to have you consider employment at Williams-Russell and Johnson, Inc. and look forward to a mutually beneficial employment relationship. Please sign, date and return the original of this document, to Ms. Adams-White to advise us of your decision on this offer.

Very truly yours,

**WILLIAMS-RUSSELL AND JOHNSON, INC.**

Charles E. Johnson, Sr., P.E.
President and CEO

Enclosures

cc:     Director of Office Administration, Human
            Resources & Business Development Assistance
        Special Assistant to the President

**OFFER ACCEPTED** _____     7-16-12
                                                                    **DATE**


**OFFER REJECTED** _____     _____
                                                                    **DATE**

*Exhibit T pg1*

**TO: Deborah Tunstall, EEOC**

RE: Appeal and Evidence – EEOC Charge No. 410-2014-01221/410-2014-01227
Roy Covin vs. William-Russell & Johnson Inc. /Marta

Concern Parties: Michael Cooper (Cooper), Michael Moore (Moore), Mike Swaney (Swaney). The exhibits below outline and supports my allegations proving the Respondents have lied to cover up actions and intent, as well as perjured themselves in this proceeding.

1. The Respondents stated to EEOC that I did not have the skills or experience required for the project. Here is my resume and other accomplishments, including a minor in computer science, and detailing my years of electrical and construction experience, Educational Transcript – ("Cum laude 3.08 GPA) & DD214 - Military - **EXHIBIT A (6 pages)**
   Electrical Design/Engineer experience – Electrical Company Owner – **EXHIBIT B (2 Pages)**
   Letter of recommendation of Design, Engineering Electrical Wiring and Construction Consultant for Church - New Gethsemane, Albany, GA - **EXHIBIT C**
   Letter of recommendation of work completed including Engineered, rewired and construction of offices at Brooks Plaza, Albany GA - **EXHIBIT D**
   Photo evidence of previous successful MARTA work as MARTA Electrical/ Safety Inspector 2004 - **EXHIBIT E**
   Photo from previous MARTA work, and photo of Assistant Construction Manager work for the State of Georgia's Technical Education Building project - **EXHIBIT F**
   Photo of State of Georgia work as Asst. Construction Manager for Parsons Brinskerhoff Construction Services, Inc., completing a $27 Million computerized building project – **EXHIBIT G**
   Centex Construction Company report, proof of State of Georgia Construction work- **EXHIBIT H (3 pages)**

2. Cooper, Moore, and Swaney were not aware that I completed wiring check off per instructions because they never checked my work. They assumed that I did not do the work because I presented concerns of possible liability to MARTA. I also DID NOT bypass my immediate supervisor because the email clearly states that I talked to my immediate supervisor, who at that time was Michael Moore. Moore told me to email Cooper with these concerns. In short, I followed both protocol and instructions. No one spoke to me about the wiring check off work to see that it has been done. **EXHIBIT I (3 Photos of Rack to Rack wiring checks completed).**

3. Regarding the email to Copper concerning wire checks being performed by both inspector and Alstom, it was clearly not a refusal to do my job, but information concerning possible liability issues that was obviously misunderstood and taken negatively. It was simply a suggestion for review only. However no one took the time to see if I completed the task as instructed to do so and assumed that I did not do the work. I also did not bypass my direct supervisor in emailing Cooper but followed protocol and instructions. - **EXHIBIT J (email to Cooper)**

4. NO real negative job performance on the only evaluation received after almost a year and a half. There is no evidence of any complaints of my job performance. There was Never a pre-termination discussion/documentation, coaching or write up. If MARTA had

*Exhibit T pg2*

any issue then I deserved DUE PROCESS before an abrupt termination. - **EXHIBIT K (Copy of Only written or oral review from immediate supervisor Moore, and included is my accompanied explanation for the record per review guidelines.)**

5.    Daily Track Time Sheets, that I was told to maintain, were never collected at the end of each week. I was told from Moore, per Cooper, to take this form daily in order to keep an account of when the inspector, and the contractors started work. This information was recorded on a "Track Time Schedule Form". I performed my duty as instructed from the assigned dates of: 10-18-2013 to 10-31-2013. It was as if they were assigning me work with no intentions of ever requesting it, except as a harassing tactic, and then come back and say, "I did not perform my assigned duties."

- **EXHIBIT L (one copy of a total of 9 - three page carbon, MARTA Daily Track Time sheets)**

6.    In my exit interview, MATC did not understand why MARTA wanted to dismiss me when just weeks earlier, MARTA / (Michael Cooper) informed them that I was doing well.
**EXHIBIT M (Audio recording of conversation with MATC).**

7.    I successfully headed up 17 TCFU, and 3 SFU Start Ups at MARTA Train Control rooms including: insuring Alstom and Cleveland Electric team members had access, monitored testing, alerts, safety, completed specialized training with Alstom administrating training of Inspectors, Cleveland Electric employees and MARTA retirees (hired by Alstom). Insured internet access was available to complete requirements and reports.
**– Exhibit 10 – Daily reports logs demonstrating my work.**
**While there is a written daily journal for each report, they are also available on the SharePoint system that will require subpoena.**

8.    I had a very good working relationship with Team A, Alstom, Cleveland Electric, the MARTA Retirees and MARTA Technical employees.

9.    The Respondent stated to EEOC that I had "not performed adequately", they "tried to coach me to develop my skills", and that I was "uncooperative...not completing project forms, properly documented written reports and the key roles of an inspector". But the only written review I ever received stated: **NOTE STRONG ATTRIBUTES: Timely submittal of Documentation. (See Exhibit K).**
**If these claims of poor work were true, again MARTA failed to provide me with these concerns within a reasonable time before termination, and there was no pre-termination discussion as far as my performance.**

**Also the so called "documented" evidence MARTA presented (email dated 28, 2013) was written only three days before termination. On NOVEMBER 01, 2013 I was discharged and NOT November 11, 2013. (see Separation Notice) I also NEVER received this email. If so I would have responded in writing immediately. In reference to the time line, the decision to terminate me was made first and then a collection of unfounded claims were quick crafted to appear as though I had a long history of poor work. But there is no evidence of poor work. All of this is a blatant violation of my civil rights.**

Exhibit T pg3

10.  Finally, in regards to my claims of discrimination, retaliation, and harassment.  When we first started the SharePoint System, I reported (emailed) then inspector Mike Swaney was consistently submitting incorrect posting (about 30+). Later Swaney informed everyone, more than 6 months before the position opened, that he was actually hired by MARTA to take the then supervisor, Eula Raines' job. I did not think much about it, until Raines' position opened as she was strangely removed after 1 and half years.  I sent an email inquiring about the open position to see if MARTA would be taking any applications/resumes.  I never heard back from Michael Copper (That email is in the MAT-C email system which I no longer have access to, but can be subpoenaed if necessary). In the meantime both I and Michael Swaney.begin at the same place receiving specialized electrical training for the specific job from Alstom between November and December of 2012 and January 2013.  I believed that MARTA would advertise the open position of Eula Raines and simply wanted to apply. But without any known advertising Swaney was in the position. From that point on I begin to experience extra hostility as if I was not to have asked about the available position or ask any questions at all.

MARTA is discriminating by attempting to create this fiction of my abilities, this character assignation which is a deprivation of my character, can only be proven by their lies and assumptions. Sadly others are following and obliging because of their superiors.


Respectfully submitted,
Roy C. Covin



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Atlanta District Office**

100 Alabama Street, SW, Suite 4R30
Atlanta, GA 30303
TTY (404) 562-6801
FAX (404) 562-6909/6910
Website: www.eeoc.gov

October 6, 2014

Mr. Roy C. Covin
1017 Princeton Park Drive
Lithonia, GA 30058

RE: EEOC Charge No. 410-2014-01221/410-2014-01227
Roy Covin vs. William-Russell & Johnson Inc./Marta

Dear Mr. Covin:

I have reviewed the evidence submitted on behalf of the Respondent, and the following is a summary of the information thus far in the investigation of the case.

You allege that you were discriminated against based on your race (Black), and in retaliation for opposing an unlawful employment practice. Specifically, you contend that in late August 2013, a White co-worker was promoted. However, you were not given the same opportunity to apply for the promotion. You communicated your interest in a position of greater responsibility, and were told that there were no positions open. On November 11, 2013, you were discharged from your position as an Electrical & Train Control Inspector. *wrong*

Respondent denies this and contends that its reasons were for a legitimate, non-discriminatory reason. Per Respondent, William-Russell & Johnson (WRJ) discharged you because its client directed taking you off the project as you had poor performance and was difficult to work with, and there was no other work for you to do.

Per Respondent, on October 23, 2013, Mr. Moore told you about a missing wire and asked you to take some follow up action to ensure that all wires were installed. Instead of acting as instructed, you gave a lengthy explanation of what you thought should be done. Subsequently, instead of contacting your direct supervisor, Mr. Swaney, about the issue, you sent an e-mail to Mr. Cooper regarding the issue, bypassing your direct supervisor. *Did you see*

Documented evidence reveals that on October 28, 2013, an e-mail was sent from Michael Cooper (Project Manager), alleging that over the past several months, as the project had shifted to more aggressive installation and testing activities requiring electrical and technical skills, you did not demonstrate the skill and experience desired and/or required for the project. The e-mail also states that on several occasions, you had not performed adequately, and when it was brought to your attention in order to try to coach you to develop your skills and follow directions, you resisted and pointed the blame on others, or on procedures, processes, etc. The e-mail further states that you demonstrated resistance and had been very uncooperative for very simple things like completion of project forms, properly documented/written reports, performing the key roles of an inspector, etc. Per Respondent, your behavior had not improved and continued to escalate, and the project team did not have time to argue or try to convince you of what was expected and required for your performance.

*Exhibit T pg.*

Regarding your retaliation allegation, Respondent denies that you complained regarding discrimination. There is no evidence in the case file to conclude that you engaged in a protected activity.

It appears that your allegations have not been supported at this time as Respondent has provided documented evidence to support its decision, whereas you have not.

This information will be used to render a decision in the charge. However, if you have any additional information which you believe refutes the above evidence, please provide it in writing by close of business, **October 20, 2014**. If we do not hear from you, your charge will be forwarded for supervisory review and the Director's decision. If the Director confirms the supervisory recommendation, your Dismissal and Notice of Right to Sue will be sent to you. Please be reminded that if you choose to file a lawsuit in federal court, you must do so within 90 days of receipt of the Dismissal Notice, or your right to sue is lost and cannot be restored.

Sincerely,

Deborah Tunstall
Federal Investigator
(404) 562-6846
deborah.tunstall@EEOC.gov

**LOOSE WIRES MIDTOWN TCR 9-25-13**

$Exhibit\ U$

**COVE COVIN** <covin3712@gmail.com>

Sep 28

On 9-25-13, I entered the Midtown TCR, with Cleveland Electric's Supervisor Nathan Connelly. I noticed a fuse blown at rack P1, reported to Cleveland, and Rail Control called and there was a speed restriction in zone (1). ATC person enter the TCR, we showed him the blown fuse. He replaced it but could not cancel the restriction. Three other persons from ATC enter to help. One of Cleveland's guys closed the Panel Door at T2 and ATC was able to cancel the restriction. I reported to Mike Swaney, the status of the TCR, he reported to ACT and requested to trouble shoot the wiring at T2. We informed all Cleveland guys to be careful in that rack and in all racks, with cutting wires and tools, while working in the racks.

On 9-27-03, it was documented in the TCR log book that ATC was in to trouble shoot the loose wire at T2 and found no problem. At approximately 1:15 PM there was two speed restrictions in zoon 1 and 3, I call Rail Control, and an ATC person (Bany) came to the TCR, I explained what happen previously. He finely hit a relay and touched some wires at T2 and was able to cancel the two restrictions. Approximately 3:05 PM both speed restrictions were back on. One ATC person came in saying Rail Control did not we were working in this TCR. We called Rail and explain the problem. Rail Control Supervisor asked if the Contractor needed a ATC person in the room continually, I informed him that Mike Swaney (Install Manager) and myself discussed this today and h is to make the request. He (Rail Super) also is to make that request.

While on the phone ATC person (Bany) came in the room to help first guy, also another ATC person (McKenny) enter the room stating " what have you all done now"!!. The Contractor was leaving at that time. I let them out because I just call to secure the TCR door. After completing the conversation with the Rail Super, I went to inform the ATC persons of the problems. I stated that this equipment was too old. The ATC person (McKenny) stated as he was ramping and loud stating that" this is the Contractor fault and this did not happen until they came in working. I tried to explain what happen with the Panel Door. I could not get two words in when he would start shouting "this is the Contractors fault"!!. I ask him, was he going to allow me to explain. He cursed and walked off. The one ATC guy tried to talk to him. I guest he wanted to call that an argument. They touched some wires and hit on the relays at T2 and were able to cancel the two restrictions. They also found a wire pin connector on top of a relay. We all left the TCR, while talking to McKenny. we both admitted that we all are only human.

Submitted, Respectfully

Roy Covin -MARTA/MATC Inspector

*Exhibit - V*

This is (Exhibit –V), a recording of the Plaintiff's Blood Pressure Check. The Plaintiff's Blood Pressure was high from the first week of the Wrongful Termination until the later part of December 2013 as a result of his Wrongful Termination from MARTA and its agent Michael Cooper.

The recording is located at You Tube link:
**https://www.youtube.com/watch?v=DOXvgrSqDJw**

*Exhibit W* pg1

**Williams-Russell and Johnson, Inc.**
**Employee Personnel Handbook**

If employees have a message of interest to the workplace, they may submit it to the Human Resources Department for approval. All approved messages will be posted by the Human Resources Department.

## 7.09 Drug Testing

Williams-Russell and Johnson, Inc. is committed to providing a safe, efficient, and productive work environment for all employees. Using or being under the influence of drugs or alcohol on the job may pose serious safety and health risks. To help ensure a safe and healthful working environment, employees may be asked to provide body substance samples (such as urine and/or blood) to determine the illicit or illegal use of drugs and alcohol. Refusal to submit to drug testing may result in disciplinary action, up to and including termination of employment.

## 7.10 Progressive Discipline

The purpose of this policy is to state Williams-Russell and Johnson's position on administering equitable and consistent discipline for unsatisfactory conduct in the workplace. The best disciplinary measure is the one that does not have to be enforced and comes from good leadership and fair supervision at all employment levels.

Williams-Russell and Johnson's own best interest lies in ensuring fair treatment of all employees and in making certain that disciplinary actions are prompt, uniform, and impartial. The major purpose of any disciplinary action is to correct the problem, prevent recurrence, and prepare the employee for satisfactory services in the future.

Although employment with Williams-Russell and Johnson, Inc. is based on mutual consent and both the employee and Williams-Russell and Johnson, Inc. have the right to terminate employment at will, with or without cause or advance notice, Williams-Russell and Johnson, Inc. may use progressive discipline at its discretion.

Disciplinary action may call for any of four (4) steps – verbal warning, written warning, suspension with or without pay, or termination of employment – depending on the severity of the problem and the number of occurrences. There may be circumstances when one (1) or more steps are bypassed.

Progressive discipline means that, with respect to most disciplinary problems, these steps will normally be followed: a first offense may call for a verbal warning; a next offense may be followed by a written warning; another offense

**Williams-Russell and Johnson, Inc.**
**Employee Personnel Handbook**

*Exhibit W pg2*

may lead to a suspension; and, still another offense may then lead to termination of employment.

Williams-Russell and Johnson, Inc. recognizes that there are certain types of employee problems that are serious enough to justify either a suspension; or, in extreme situations, termination of employment, without going through the usual progressive discipline steps.

While it is impossible to list every type of behavior that may be deemed a serious offense, the "7.01 Employee Conduct and Work Rules" policy includes examples of problems that may result in immediate suspension or termination of employment. However, the problems listed are not all necessarily serious offenses, but may be examples of unsatisfactory conduct that will trigger progressive discipline.

By using progressive discipline, we hope that most employee problems can be corrected at an early stage, benefiting both the employee and Williams-Russell and Johnson, Inc.

## 7.11 Problem Resolution

Williams-Russell and Johnson, Inc. is committed to providing the best possible working conditions for its employees. Part of this commitment is encouraging an open and frank atmosphere in which any problem, complaint, suggestion, or question receives a timely response from Williams-Russell and Johnson's supervisors and management.

Williams-Russell and Johnson, Inc. strives to ensure fair and honest treatment of all employees. Supervisors, managers, and employees are expected to treat each other with mutual respect. Employees are encouraged to offer positive and constructive criticism.

If employees disagree with established rules of conduct, policies, or practices, they can express their concern through the problem resolution procedure. No employee will be penalized, formally or informally, for voicing a complaint with Williams-Russell and Johnson, Inc. in a reasonable, business-like manner, or for using the problem resolution procedure.

If a situation occurs when employees believe that a condition of employment or a decision affecting them is unjust or inequitable, they are encouraged to make use of the steps listed here. The employee may discontinue the procedure at any step.

1.      Employee documents and presents problem to immediate supervisor after incident occurs. If supervisor is unavailable or employee

*Exhibit X p1*



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Atlanta District Office**

100 Alabama Street, SW, Suite 4R30
Atlanta, GA 30303
TTY (404) 562-6801
FAX (404) 562-6909/6910
Website: www.eeoc.gov

October 24, 2014

Mr. Roy Covin
1017 Princeton Park Drive
Lithonia, GA 30058

*Rec.*
*N1 - 3 - 2014*
*Mail Stamp - 10-27-1*
*Date Letter - 10-24-1*

RE:   Charge No. 410-2014-01221/410-2014-01227
      Roy Covin vs. William-Russell & Johnson Inc./Marta

Dear Mr. Covin:

This is to advise that the investigation of your case has been completed.

You allege that you were discriminated against based on your race (Black), and in retaliation for opposing an unlawful employment practice. Specifically, you contend that in late August 2013, a White co-worker was promoted. However, you were not given the same opportunity to apply for the promotion. You communicated your interest in a position of greater responsibility, and were told that there were no positions open. On November 11, 2013, you were discharged from your position as an Electrical & Train Control Inspector.

Respondent denies this and contends that its reasons were for a legitimate, non-discriminatory reason.

A Pre-Determination Letter was mailed to you on October 6, 2014. You submitted your timely rebuttal to me via e-mail on October 20, 2014. However, the rebuttal did not alter the findings per the Pre-Determination Letter. Per Respondent, William-Russell & Johnson (WRJ) discharged you because its client directed taking you off the project as you had poor performance and was difficult to work with, and there was no other work for you to do.

Per your rebuttal, you stated that "they assumed that I did not do the work because I presented concerns of possible liability to MARTA...Regarding the e-mail to Cooper concerning the wire checks being performed by both inspector and Alstom, it was clearly not a refusal to do my job, but information concerning possible liability issues that was obviously misunderstood and taken negatively."

Based on these statements, your discharge was not consistent with your race or retaliation. The documented evidence revealed that there was a causal connection between the time that you sent the e-mail addressing your issues and concerns regarding safety matters and your discharge. However, the e-mail did not support a statutorily protected activity that falls within the EEOC jurisdiction, which negates your retaliation allegation. It was your perception that Management took issue with the e-mail.

While we fully understand that the parties to a charge often have very firm views that the available evidence supports their respective positions, our final determinations must comport with interpretations of the available evidence and the laws that we enforce.

Based on the foregoing, there is no evidence from which we can infer that Respondent's stated reason(s) for its actions were a pretext for any discriminatory motive. The evidence does not support a violation of the statute(s).

Enclosed with this letter is a document entitled Dismissal and Notice of Rights. This document is your notice to you that we are dismissing your charge because we were unable to find any violations öf the statutes we enforce and it also explains your private suit rights.

You can pursue the matter by filing suit in Federal District Court within 90 days from receipt of the Right to Sue.

Sincerely,

Deborah Tunstall
Federal Investigator

*Exhibit X pg 3*

EEOC Form 161 (11/09)         **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To:  **Roy C. Covin**                     From:  **Atlanta District Office**
     **1017 Princeton Park Drive**                      **100 Alabama Street, S.W.**
     **Lithonia, GA 30058**                            **Suite 4R30**
                                                 **Atlanta, GA 30303**

|  | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 410-2014-01227 | **Deborah Tunstall,** Investigator | (404) 562-6846 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]  The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]  Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

                                On behalf of the Commission

Enclosures(s)                     **Bernice Williams-Kimbrough,**         *(Date Mailed)*
                              **District Director**

OCT 27 2014

cc:   **Mozley, Finlayson & Loggins LLP**
     **Attn: Ms. Janine Willis, Esq.**
     **One Premier Plaza**
     **Suite 900**
     **5605 Glenridge Drive**
     **Atlanta, GA 30342**